# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| **MARIE and JOSEPH DANVERS** ) <br> **as next friends for minor** ) <br> **CAROL DANVERS**, ) <br> C/O Bosson Legal Group, P.C. ) <br> 8300 Arlington Blvd ) <br> Fairfax, VA 22031 ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> **LOUDOUN COUNTY SCHOOL BOARD**, ) <br> 21000 Education Court ) <br> Ashburn, VA 20148 ) <br> ) <br> **CARLOS SERRANO** in his personal capacity, ) <br> 138 Misty Pond Terrace ) <br> Purcellville, VA 20132 ) <br> ) <br> **BILL JOHNS**, personally and in his official ) <br> capacity as the Senior Naval Science Instructor ) <br> at Loudoun County High School ) <br> 415 Dry Mill Road SW ) <br> Leesburg, VA 20175 ) <br> ) <br> **MURIEL HEANUE**, personally and in her ) <br> official capacity as Assistant Principal ) <br> at Loudoun County High School ) <br> 415 Dry Mill Road SW ) <br> Leesburg, VA 20175 ) <br> ) <br> and ) <br> ) <br> **MICHELLE LUTTRELL**, personally and in ) <br> her official capacity as Principal of ) <br> at Loudoun County High School ) <br> 415 Dry Mill Road SW ) <br> Leesburg, VA 20175 ) <br> ) <br> *Defendants*. ) | Civil Action No. 1:21-cv-1028 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Marie and Joseph Danvers, as next friend of their minor daughter Carol Danvers[1] (collectively "Plaintiff"), through counsel, states the following as her Complaint against the Loudoun County School Board, Carlos Serrano, Bill Johns, Muriel Heanue, and Michelle Luttrell ("Defendants").

## INTRODUCTION

1. This is a civil rights case brought on behalf of Ms. Danvers, a former student at Loudoun County High School.  Ms. Danvers was sexually harassed and assaulted by Defendant Serrano in the School's Navy Junior Reserve Officer Training Corp (JROTC) program, then—after she reported him—subjected to a campaign of retaliatory harassment by both Serrano and other students.

2. Despite being an exemplary, high-character student, Ms. Danvers was ultimately forced to transfer to another high school due to ongoing, unfettered student-on-student harassment, losing access to the School and its JROTC program which was unavailable at other schools in the County.  Each of the named Defendants is liable for their own actions, as detailed below, including deliberate indifference to retaliatory harassment.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the laws of the United States.

---

[1] Carol, Marie, and Joseph Danvers are pseudonyms to protect the identity and safety of the minor victim.  A Motion to Proceed by Pseudonym will be filed contemporaneously.  Pursuant to Federal Rule of Civil Procedure 5.2, other minors named herein shall be identified only by their initials, and their full identities will be disclosed to Defendants under appropriate conditions.

Specifically, Plaintiff asserts claims under Title IX of the Education Amendments of 1972, 20 U.S.C § 1681 *et seq*, 42 U.S.C. §1983, and related constitutional protections.

4.      Venue is proper under 28 U.S.C. § 1391 in the Eastern District of Virginia because the Defendants and Plaintiff reside in this Court's judicial district, and all or substantial part of the events or omissions on which the claims herein are based occurred in the Eastern District of Virginia.

## PARTIES

5.      Carol Danvers ("Ms. Danvers") is a 17-year-old minor who resides with her parents Marie and Joseph Danvers in Loudoun County, Virginia.[2]   Marie and Joseph Danvers, serving as Ms. Danvers' next friend in this suit, are parents and general guardians of Ms. Danvers within the meaning of Fed. Rule Civ. Pro. 17(c).

6.      Defendant Loudoun County School Board (the School Board) is a public school board that is responsible for overseeing the operation and management of the public education system of Loudoun County Public Schools, which include Loudoun County High School (the School).

7.      Defendant School Board is the body corporate for the School under Virginia law, vested with all the powers and charged with all the duties, obligations, and responsibilities imposed upon the School.

8.      Defendant School Board is the public body "that governs [the] school division" of the School, within the meaning of Va. Code Ann. § 22.1-1, VA. Const., Art. VIII, § 7 ("The supervision of schools in each school division shall be vested in a school board"), Va. Code Ann.

---

[2] See note 1 above.

§ 22.1-28 (same), and Va. Code Ann. § 22.1-71 (stating that the "school board" is the "body corporate" with the power to "sue" and "be sued").

9.      As the corporate body for the School, Defendant School Board is a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a).

10.     Defendant Carlos Serrano was a Naval Science Instructor at the School.  He committed the sexual harassment and initiated the retaliation against Ms. Danvers as detailed below.

11.     Defendant Captain Bill Johns is the Senior Naval Science Instructor at the School, and thus is the head of the School's JROTC program.  Defendant Johns has the authority and ability to report sexual harassment, prevent retaliation for reporting by more junior instructors like Defendant Serrano, and take official measures to prevent instructor or student harassment and remediate Ms. Danvers's harms—but failed to do so in this case.

12.     Defendant Muriel Heanue was—for the period of this complaint—the Assistant Principal for the School.  Defendant Heanue was specifically charged with overseeing student conduct and discipline, and had the authority and ability to take official measures to prevent retaliatory student harassment and remediate Ms. Danvers's harms—but failed to do so.

13.     Defendant Michelle Luttrell is the Principal of the School.  Defendant Luttrell has the authority and ability to set training and sexual harassment policy, discipline and report sexual harassment by School employees or students, prevent retaliation for reporting sexual harassment, and take official measures to prevent instructor or student harassment and remediate Ms. Danvers's harms—but failed to do so in this case.

4

## FACTS

### A.  Defendant Serrano's Sexual Harassment

14.     During the 2018-2019 academic year, Ms. Danvers was a 14-year-old freshman in the Junior Reserve Officer Training Corps ("JROTC") at Loudoun County High School.

15.     JROTC is a four-year leadership training in naval science intended to prepare students to attend a military academy.  In JROTC, students are ranked based on academic performance and drills.  As a student improves, their rank increases.

16.     Ms. Danvers met retired Marine Gunnery Sergeant Carlos Serrano in August 2018 at a week-long JROTC summer course.  Serrano—a man in his late 50s—would be teaching her Naval Science class (which is part of the JROTC program at the School) in the forthcoming school year.

17.     Serrano cultivated a sexist atmosphere in the JROTC program, frequently teasing male students by saying "you don't want to get beat by a girl," limiting the Armed Drill Team to male students, teasing girls who tried to answer questions in class by saying "go make somebody a sandwich," and telling certain girls on the step team that he was putting them in front because they were "the most attractive" (and insisting that Ms. Danvers join the team).

18.     Beginning on the last day of the event and continuing after school started on August 23, 2018, Serrano began a systemic grooming behavior of sexual harassment against Ms. Danvers; he would pay her extra attention and would often go out of his way to talk to her and engage in physical contact, such as touching her shoulders or lightly punching or nudging her arms.

19.     Around August 27, 2018, Serrano obtained Ms. Danvers's cell phone number from another JROTC student K.M., and began texting Ms. Danvers.  He told Ms. Danvers that she was

one of his favorite students and claimed that she was one of the few students that made it onto his phone contact list.

20.     As time went on, Serrano continued to interact with Ms. Danvers more frequently and in a different manner than the male JROTC students.   This special attention made her extremely uncomfortable.

21.     For example, he gave her special assignments and referred to her as his "assistant." When all of the other JROTC students did daily push-ups with their JROTC mentors (senior high school students) during physical training in the Naval Science 1 class, Serrano often removed Ms. Danvers from the group and brought her into his office, where she was alone with him.

22.     Serrano regularly went out of his way to find Ms. Danvers and ask her personal details about her life, such as whether her parents were home all the time, and what she did after school.

23.     Serrano escalated his grooming behavior between August and November of 2018. For example, he brought Ms. Danvers various treats and gifts and continued telling her that she was one of his "favorites."   Serrano promised Ms. Danvers that he would ensure she received prestigious positions in the program as she got older.

24.     Serrano claimed that Ms. Danvers reminded him of his younger self and he asked her to call him "Big G" (for Big Gunny, given that "Gunny" was a nickname that many students called him) and said that he would call her "Little G."

25.     He also engaged in inappropriate touching on multiple occasions.

26.     In one instance, Marie Danvers purchased an official Navy shirt for Ms. Danvers but bought the wrong size.  Ms. Danvers approached Serrano with a request to exchange the shirt

for the right size and Serrano said that, although doing so went against protocol, he would do it for her since she was "Little G."

27.     He then led Ms. Danvers to the supply room across from his office, put his arms around her chest (touching her breasts through her clothing) in an embrace, and told her that this had to stay between them as a secret.  After this incident, Serrano continued to hug Ms. Danvers on a regular basis on school property, both in the JROTC annex building and in the school parking lot.

28.     On many occasions, Serrano came up behind her and hugged her with his arms draped gratuitously across her chest, touching her breasts.

29.     He also provided her with special favors that she did not ask for and that were not appropriate for someone of her ranking, such as successfully petitioning the school to grant her key-holder status, which would allow her to unlock the school building in the morning.

30.     Another instance of inappropriate touching occurred when, in or around October 2018, Ms. Danvers went on a field trip to a Naval Academy football game in Maryland with JROTC.

31.     Serrano again came up behind Ms. Danvers, wrapped his arms around her chest, pulled her against his body, and held her there, coming into contact with her breasts.

32.     He also offered to buy her a gift at the gift shop, which she declined.

33.     It was well-known throughout the JROTC program that Serrano gave special attention to freshman girls, and to several in particular during the fall of 2018.

34.     The male JROTC students often referred to the three girls (Ms. Danvers and minors K.M. and J.Y. as "Gunny's girlfriends" or "Gunny's honeys," including to Ms. Danvers's face.

7

35.     The male students stated at one point that anyone with breasts could get anything they wanted from Serrano and that all the girls had to do was kiss him, let him "hug up" on them, and "screw [their] way around the unit" to get any jobs they wanted from Serrano.

36.     Ms. Danvers also heard from another student that Serrano had texted one of the current JROTC female students about meeting her somewhere away from school property and had said that he did not want anyone to think that he "forced" her.

37.     This wording suggested that Serrano had engaged or would be engaging in sexual activity with a minor student.

38.     In November of 2018, as Ms. Danvers increasingly distanced herself from Serrano, her friends K.M and J.Y. became more hostile towards her for doing so.  They bragged to Ms. Danvers about being Serrano's "favorites" while stating that Ms. Danvers no longer was.

39.     During this time, Ms. Danvers observed Serrano's inappropriate behavior with the girls continue.  For example, she saw K.M. go into Serrano's office and leave with a box that appeared to be a gift.  As he exited, Serrano saw Ms. Danvers, called her "Little G," and said that she was not his "favorite" anymore.

40.     In or around October 2018, Ms. Danvers was getting ready to go on a November 5th field trip to Parris Island with the freshmen JROTC students.  Prior to the trip, Serrano repeatedly asked her if she was going and reminded her repeatedly to bring a swimsuit.

41.     Ms. Danvers never heard Serrano tell any other student to bring a swimsuit and did not understand why she would need one.  Ms. Danvers told her mother what Serrano had said about bringing a swimsuit and Marie Danvers therefore decided that it was not safe to send her daughter on the trip.  When Marie told Serrano that Ms. Danvers could no longer attend (citing a family issue to avoid angering him), Serrano became visibly upset.

42.     In October 2018, Ms. Danvers began to share with her mother the details of what was occurring.  Mrs. Danvers also began to notice Serrano's pattern of inappropriate behavior with students at various times when she was dropping off or picking up Ms. Danvers from school.

43.     On November 1, 2018, Mrs.  Danvers reported the pattern of behavior directed at Ms. Danvers from K.M. and J.Y. to JROTC Master Chief Deanna Foust and Serrano via email. She initially focused the report on the peer bullying that was occurring, because of Ms. Danvers's fears of potential retaliation by Serrano if she were to mention Serrano's sexually inappropriate behavior.

44.     Mrs. Danvers asked to meet to discuss the bullying in further detail and thought this would allow her to also bring up Serrano's inappropriate behavior with the girls.  However, during their meeting on November 2, 2018, with Serrano and Senior Naval Science Instructor/Captain Bill Johns, Serrano became extremely defensive when Mr. and Mrs. Danvers sought to raise Serrano's sexual grooming behavior and treatment of their daughter and other girls.

45.     Afterwards, Serrano approached Ms. Danvers in person when she was alone at school to defend the students who were bullying her and claim that this was simply "girl drama."

46.     On November 9, 2018, Mrs. Danvers emailed Defendant Johns asking to meet without Serrano present in order to discuss the continuing and escalating bullying issues, as well as to report Serrano's actions.  Johns agreed to meet but also alleged that Serrano had met with the students to address the incidents.

47.     The Virginia Board of Education published, in 2011, "Guidelines for Prevention of Sexual Misconduct and Abuse in Virginia Public Schools" that would have prohibited Serrano's conduct, including instructions to school boards to implement policies against:

a.  "Conducting ongoing, private, conversations with individual students that are unrelated to school activities or the well-being of the student and that take place in locations inaccessible to others;"

b.  "Singling out a particular student or group of students for personal attention and friendship beyond the bounds of an appropriate educator/mentor-student relationship;" and

c.  "Physical contact with a student that could be reasonably interpreted as constituting sexual harassment."

48.     However, the School and the School Board failed to implement and enforce these Guidelines, and failed to protect Ms. Danvers from Serrano's sexual harassment.

**B. Escalating Retaliation Under Serrano**

49.     Through the remainder of November 2018, Serrano engaged in escalating retaliation against Ms. Danvers.

50.     Among other actions, he arbitrarily took off points during uniform inspections without any basis for doing so (which lowered her grade in the class), gave her low marks on her assignments without any justification, ignored her when she asked questions, glared at her when he saw her in the hallways, and spoke to her in an aggressive and mean manner when addressing her in front of the entire class.

51.     Serrano also expressly forbade students from attending Ms. Danvers's Quinceañera (fifteenth birthday party) outside of school, banned her from being in the annex after school, excluded her from drill meets, and refused to issue the awards and ranking that she had earned.

52.     On December 6, 2018, Mrs. Danvers met with Defendant Johns to report Serrano's sexual harassment and retaliation, and the student retaliation she was experiencing.  Johns

10

downplayed her reports, and stonewalled her request for assistance, insisting that the Danvers could not prove that Serrano was doing this as a form of retaliation.

53.    Capt. Johns did not take any ameliorative action, nor did he report the sexual harassment and retaliation complaints to pertinent authorities as he was required to do by law.  As a result, they continued.

54.    In January 2019, an upperclassman and JROTC mentor informed Ms. Danvers that he was afraid to spend time with her because he would get in trouble with Serrano.  Another student who was a JROTC mentor mocked Ms. Danvers for reporting Serrano by pointedly asking if he had her permission to touch her during uniform inspections.  Almost all of the JROTC students refused to interact with her.  Due to Serrano's actions, she was ostracized in the JROTC unit.

55.    In January 2019, Serrano insisted that Ms. Danvers was involved in too many teams and should drop out of one, despite the fact that she had a 4.2 GPA.  Under his pressure, Ms. Danvers was forced to drop out of Master Chief Foust's Marksmanship Team.

56.    Then, in or around mid-February, Serrano sent parents an email stating that he would be reorganizing the PT Team.  Approximately one week later, Serrano dismissed Ms. Danvers from the PT Team.

57.    In doing so, Serrano conducted physical fitness drills that ranked students based on the physical abilities, including push-ups.  Although Ms. Danvers was one of the highest performers—even previously winning an award for physical fitness—and even though she performed better than other girls, Serrano removed her from the team.

58.    On February 14, 2019, Ms. Danvers heard from a fellow student that Serrano had texted J.Y. something to the effect of "we can't do it on school property.  I don't want to force you to do anything."

11

59.     Ms. Danvers told her mother about this text exchange.  Afraid for the safety of J.Y., Mrs.  Danvers repeatedly called Principal Luttrell's office requesting to meet, starting on February 19, 2019.

60.     To Mrs. Danvers' knowledge, nothing had been done to address the sexual harassment and retaliation by Serrano nor the peer harassment and retaliation that he was initiating against her daughter.

61.     However, the principal's assistant repeatedly claimed that the principal was not available to speak with her while asking for details about why Mrs. Danvers wanted to speak with her.  Mrs. Danvers shared that she wanted to report a teacher's inappropriate conduct, sexual harassment, and retaliation against her daughter to Principal Luttrell.

62.     By February 22, 2019, having received no response, Mrs. Danvers filed a written Title IX complaint with the School Board's central office against Serrano for sexual harassment and retaliation.

63.     Finally, on February 25, 2019, Principal Luttrell agreed to meet with Mrs. Danvers, who again reported Serrano's sexual harassment and retaliation.

64.     Mrs. Danvers noted that this was a sexual harassment complaint, which led Principal Luttrell to become adversarial and question whether they really wanted to file a Title IX complaint.

65.     Principal Luttrell also claimed that she had met with Serrano, Captain Johns, and Master Chief Foust the prior week because she allegedly did not want to be "blindsided" by the Danvers' complaints against Serrano.

66.     From all appearances, however, Principal Luttrell did nothing to address the underlying issues at this juncture.

12

67.     Meanwhile, Serrano's retaliation continued.  Armed Drill Teams across Virginia JROTC programs are normally co-ed, but until Ms. Danvers, Serrano had restricted enrollment to males, claiming that women were not strong enough to manipulate rifles.  Only after Mrs. Danvers purchased Ms. Danvers her own rifle and she repeatedly proved her competence did Serrano allow her to join (in 2018), remarking "the team sucks this year, we might as well let a girl join."

68.     On February 27, 2019, at Serrano's direction, a male upperclassman and captain of the Armed Drill Team informed Ms. Danvers that she was expelled from the team based upon a pretextual reason.

69.     To dispute her dismissal, Ms. Danvers collected text message evidence showing the few dates that she had missed practice she had contacted Serrano with grounds for an excused absence.

70.     Nevertheless, Serrano refused to place her back on the team.  This despite his practice of allowing other (male) students to remain even after frequently missing practice with no notice or excuse whatsoever.

71.     Mrs. Danvers submitted this text message evidence contradicting Serrano's claims, along with a formal retaliation complaint against Serrano, to Principal Luttrell.

72.     On or around March 4, 2019, Ms. Danvers and her parents met with the School Board's Department of Human Resources and Talent Development High School Coordinator Angela Wiley ("Coordinator Wiley").   Ms. Danvers once again reported Serrano's sexual harassment and retaliation, as well as the retaliation from her peers, in full detail.

**C. Serrano Placed on Paid Leave**

73.     On or around March 5, 2019, Loudoun County Public School District HR Supervisor Sharon Bean placed Serrano on leave.

13

74.     However, despite repeated requests, no officials ever informed Ms. Danvers or her parents about the terms of any interim measures imposed against him (such as a No Contact Order) to protect Ms. Danvers, or ensure that Ms. Danvers would be aware of what was done to protect her and would be able to report any violations.

75.     As a result, Ms. Danvers remained in constant fear of seeing Serrano at pick-up (his son was a fellow JROTC student) or in other places around school throughout the remainder of the school year.  Her mental and physical health began to decline

**D.  Student-on-Student Retaliatory Harassment**

76.     Following Serrano's placement on leave, the peer harassment and retaliation against Ms. Danvers for reporting his behavior multiplied, as Serrano's son (who was also in the JROTC program) recruited his girlfriend and friends to harass and retaliate against Ms. Danvers.

77.     In particular, minors E.E. and A.E. (twin sisters, one of whom was Serrano's son's girlfriend) coordinated a widespread campaign to ostracize Ms. Danvers.

78.     This campaign against Ms. Danvers continued throughout the 2018-2019 school year, and began again with renewed vigor when the 2019-2020 school year started in the fall.  The harassment took numerous forms.

79.     For example, before he was placed on leave, Serrano had designated A.E. as the head of the Supply Department.  In this capacity, A.E. repeatedly denied Ms. Danvers the uniform supplies that she needs.

80.     On three separate occasions, A.E. had thrown Ms. Danvers out of the supply room before she could even make the request for a ribbon rack, which she needed in order to display her awards on her uniform shirt.  A.E. yelled at Ms. Danvers to "get out" as soon as Ms. Danvers

14

entered the room.  This also precluded her from requesting other supplies (such as new uniform pants given that hers are too small and have worn out), as well as additional ribbons or pins.

81.     The twin sisters also routinely admonished students for even saying hello to Ms. Danvers.  Other times, A.E. would intentionally shoulder Ms. Danvers into a wall when in school corridors.

82.     Students would frequently yell "snitch" or "I hate snitches" at Ms. Danvers, and refuse to allow her to participate in JROTC activities.

### E.  The School's Failure to Respond

83.     Throughout this period, School officials—including Defendants Luttrell and Heanue—repeatedly downplayed and stonewalled the Danvers' attempt to end the harassment.

84.     On or around March 18, 2019, Mrs. Danvers emailed Sharon Bean regarding the school's failure to address the hostile environment that Ms. Danvers remained in at school.

85.     On or around March 19, 2019, Principal Luttrell called Mrs. Danvers and said the matter was being handled by HR Supervisor Bean and declined to address the ongoing harassment on campus until the personnel matter was resolved.

86.     On or about March 26, 2019, Assistant Principal Muriel Heanue called Ms. Danvers into her office to allegedly review the bullying incidents that Ms. Danvers was experiencing.  Mr. Mason, Ms. Danvers's counselor, was present as well.

87.     Assistant Principal Heanue downplayed Ms. Danvers reports of student harassment and cut Ms. Danvers off as she reiterated more serious details.  Neither she nor the school offered any interim safety measures or accommodations.

88.     Assistant Principal Heanue said that Ms. Danvers could come talk to her but, upon information and belief, took no corrective or investigative action.

89.     On or around April 11, 2019, Ms. Danvers's parents met with Principal Luttrell to again report the harassment and retaliation that Ms. Danvers's peers were engaging in on a daily basis.  In response, Principal Luttrell dismissed the Danvers' concerns by saying that Ms. Danvers looked "happy."  Principal Luttrell dismissed the harassment and retaliation complaints without the benefit of a proper investigation.

90.     On or around April 12, 2019, Assistant Principal Heanue asked that Ms. Danvers come in during the last week of April to re-report all of the peer harassment and retaliation incidents that she had already reported.

91.     As a result, Mrs. Danvers emailed Loudoun County Public Schools Director of High School Education Nereida Gonzalez-Sales to reiterate their complaints of sexual harassment and retaliation, as well as to report the School's ongoing failure to take corrective action, investigate, and/or prevent further harassment and retaliation.

92.     Director Gonzalez-Sales stated that she would follow up but never provided any substantive response.

93.     Instead, on April 22, 2019, Assistant Principal Heanue again asked Ms. Danvers to re-report the same incidents of peer harassment and retaliation, claiming that the school district's HR Department does not address what she defined as "bullying."

94.     On or around April 26, 2019, upon information and belief, HR Supervisor Bean called Mrs. Danvers and stated that other students had provided information corroborating her daughter's complaints against Serrano, and that she was going to recommend his termination.

95.     HR Supervisor Bean also emailed Ms. Danvers asking to meet with her and her daughter in order to ask follow-up questions.  They agreed to meet on May 1.

96.     This meeting was then extended and ultimately took place on May 14, 2019; it included HR Supervisor Bean, Director of Human Resources and Talent Development Alix Smith, and Division Counsel Stephen DeVita.

97.     On June 19, 2019 (after school ended), Director of School Administration Virginia Patterson informed Mrs. Danvers that her complaints of harassment and retaliation were unfounded as per a School investigation.  Ms. Danvers was not given the opportunity to submit any evidence to corroborate her claims during the course of the so-called investigation.  Director Virginia Patterson refused a request for appeal of her decision.

98.     But in approximately September 2019—in an unexpected shift—the Danvers learned by official letter that an investigation by the School Board into Ms. Danvers' allegations against Serrano was FOUNDED.

**F.  Continued Student-on-Student Retaliatory Harassment**

99.     Upon Ms. Danvers's return to school the fall of 2019, most upperclassmen in the JROTC program continued the hostile, retaliatory environment against Ms. Danvers, with the goal of ostracizing her in punishment for reporting Defendant Serrano.

100.    The pattern continued, but became worse.

101.    Upperclassmen in positions of leadership isolated her with rude and dismissive behavior, including staring her down whenever they saw her at school in an intimidating manner, ignoring her greetings, and denying her military courtesies contrary to JROTC protocols.

102.    Moreover, Ms. Danvers was forced to avoid arriving early to the annex because some cadets would not open the doors for her when locked, despite it being customary for cadets who were already inside to open the locked doors for arriving cadets.

103.    In dropping her off for school, Mrs. Danvers personally observed cadets look directly at her through the door and continue walking without opening it so that she could not enter.  Her mother had to resort to either dropping her off at the main building/doors or on the cafeteria side if no other students were getting into the annex.

104.    This made it difficult for Ms. Danvers to attend mandatory meetings for her position in the training department.  When cadets refused to open the door for Ms. Danvers, she was often late or missed meetings entirely.

105.    In early September of 2019, the Danvers family again contacted Principal Luttrell about ongoing retaliation, by the same students, against Ms. Danvers.  Despite it being a large school with multiple class options, no measures were taken to ensure that Ms. Danvers was not in the same classes as the students she reported.

106.    As a result, Ms. Danvers requested that the school modify her schedule by moving her out of several classes as an accommodation under Title IX.  Ms. Danvers was removed from two classes, but Principal Luttrell refused to adjust the rest of her schedule.

107.    In addition, Mrs.  Danvers brought to a school administrator's attention that Ms. Danvers was assigned lunch period with E.E. and C.S.—students who she reported several times for ongoing harassment and retaliation throughout last school year.

108.    On September 11, 2019, Ms. Danvers's gym bag with approximately $200 worth of equipment in it was stolen from the athletes' locker room, right after E.E. entered the locker room, and Ms. Danvers left to avoid her.

109.    Without her bag, Ms. Danvers was unable to participate in her regular physical education class that day; instead, she had to participate in a modified activity with a different

group.  She also had to spend considerable amount of time that day searching for the bag around school and then reporting it.

110.    Ms. Danvers filed a police report and reviewed the security footage.  After security began investigating the theft, the bag reappeared two days later in the annex building, which is a secure location accessible only by NJROTC staff and cadets.

111.    Based on viewing surveillance footage in the locker room, and all the circumstances, it appears that E.E. committed the theft as a further act of harassment.

112.    On October 1, 2019, Mrs. Danvers contacted Capt. Johns and Principal Luttrell to again report the ongoing campaign of retaliatory harassment.

113.    Again, the school did nothing.

114.    The actions of the administration were categorically insufficient to remedy the hostile environment Ms. Danvers was still suffering in the JROTC program.

115.    Notably, the School failed to take actions that were reasonably calculated to end the harassment, including several obvious remedies.  The School's omissions include (collectively, "Omissions"):

- Failing to discipline or instruct Defendant Serrano in a timely manner so as to end sexual harassment and remedy its effects;

- Failing to timely investigate Defendant Serrano's sexual harassment and sexual assaults;

- Failing to issue a no-contact order to protect Ms. Danvers from Serrano;

- Failing to investigate the subsequent harassment of Ms. Danvers;

- Failing to discipline students who harassed Ms. Danvers;

19

- Failing to train School staff about how to avoid, recognize, and stop sexual harassment by staff and students;

- Failure to adopt policies to enforce the statewide "Guidelines for Prevention of Sexual Misconduct and Abuse in Virginia Public Schools";

- Failing to reinstate Ms. Danvers's grades that had been lowered in retaliation;

- Failing to reinstate Ms. Danvers to the JROTC teams from which she had been removed;

- Failing to instruct JROTC staff and students—and other harassing students—of the need to stop the retaliatory treatment of Ms. Danvers;

- Failing to instruct students about the basis for Defendant Serrano's removal, and thus the basis for Ms. Danvers's original complaints;

- Failing to honor Ms. Danvers's requests to be removed from classes and eating periods where she would encounter identified harassing students.

- Failing to comply with mandatory reporting requirements regarding student abuse.

116.    In sum, the School Board never accepted responsibility to create a respectful environment where Ms. Danvers could access educational resources.

117.    On October 8, 2019, after unmitigated harassment at Loudoun County High School, and exacerbated mental and physical health, Ms. Danvers was forced to transfer to another high school, which did not have a JROTC program.

**G. Damages**

118.    The adverse actions described above have caused severe emotional and psychological trauma to Carol Danvers, a trauma that will follow her for the rest of her life and that no amount of therapy will fully dissipate.

20

119.    As a result of Defendants' actions, Ms. Danvers began for the first time to suffer from chronic headaches and panic attacks.  She sometimes had to be pulled out of school because of these incidents, and she began seeing a therapist.

120.    She was also prevented from pursuing the only Naval JROTC program that the Loudoun County School Board has to offer and rendering her Naval Science grades null and void.

121.    Pushed out and forced to transfer schools, Ms. Danvers, a high-performing student athlete, found herself struggling to catch up with the new school's curriculum, and work incessantly so as to lessen the negative effect on her academic progress.  All of the Defendants' actions have caused undue stress, and Ms. Danvers' grades suffered as a result.

122.    Defendants' actions have caused Ms. Danvers to incur expenses, lose equal access to educational opportunities and benefits; suffer a reduction in her grades; endure inconvenience; suffer past, present and future emotional pain and suffering, including but not limited to emotional distress, fear, anxiety and trauma; incur expenses for past and future medical and psychological care,; and lose past, present and future enjoyment of life (collectively "Damages").

## COUNT I: DISCRIMINATION IN VIOLATION OF TITLE IX

### (Against Defendant School Board)

123.    Plaintiff hereby incorporates the preceding and subsequent paragraphs of this Complaint by reference in this Count.

124.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

125.    At      the School, Ms.      Danvers attended an educational institution receiving federal funds.

## A. Discrimination by Serrano

126.    As recounted above, Defendant Serrano subjected Ms.      Danvers to sexual harassment, sexual assault, and further retaliatory harassment (including purposeful initiation of student-on-student harassment) based on her sex.

127.    Defendant Serrano's conduct was severe, pervasive, objectively offensive, and created a hostile educational environment for Ms.      Danvers based on her sex.

128.    The School Board had actual      notice of Defendant Serrano's conduct through multiple reports by Ms.      Danvers, her parents, other students, and staff.

129.    Individuals with actual knowledge of Defendant Serrano's conduct had the authority and ability to investigate and take corrective and remedial action, including Principal Luttrell, Coordinator Wiley, School District HR Supervisor Sharon Bean, Assistant Principal Heanue, and Captain Johns.

130.    The School Board was further obligated to address these reports under Title IX because it had substantial control over Defendant Serrano, the School's NJROTC program, and the school itself.

131.    By its acts and Omissions, the School Board was deliberately indifferent to Defendant Serrano's sexual harassment, sexual assault, and further retaliatory harassment.

132.    The School Board's actions and Omissions caused Ms.      Danvers to undergo harassment and made her vulnerable to it.

133.    As detailed above, the School Board's response to Serrano's sexual harassment was woefully inadequate to remedy the impact thereof.

134.     On information and belief, the School Board's failure to adopt and follow adequate sexual harassment policies (for example, failure to implement training or policies in-line with the statewide Guidelines for Prevention of Sexual Misconduct and Abuse in Virginia Public Schools), and failure to provide adequate sexual harassment training to staff, proximately caused Serrano's sexual harassment itself.

135.     The School Board's deliberate indifference deprived Ms.     Danvers of access to educational opportunities and benefits provided by the School.

136.     As a direct and proximate result of these violations of Ms.     Danvers's rights under Title IX, she has suffered and continues to suffer the Damages noted above.

**B.  Deliberate Indifference to Student Discrimination**

137.     Students at the school also discriminated against Ms. Danvers, by undertaking a coordinated program of harassment against her.

138.     This harassment is detailed above, including in Sections B, D, and F of the Fact Sections above.

139.     The harassment was severe, pervasive, objectively offensive, and created a hostile educational environment for Ms. Danvers based on her sex.

140.     The harassment was materially adverse throughout its course and was eventually sufficient to deter any reasonable person, including Ms. Danvers herself, from attending the School.

141.     The School Board was placed on notice by numerous reports that Ms. Danvers was being subjected to an organized campaign of student-on-student retaliatory harassment.

142.     The School Board had actual knowledge of the harassment through multiple reports by Ms. Danvers, her parents, other students, and staff.

143.   Individuals with actual knowledge of the student harassment had the authority and ability to investigate and take corrective and remedial action, including Principal Luttrell, Coordinator Wiley, School District HR Supervisor Sharon Bean, Director of High School Education Nereida Gonzalez-Sales, Assistant Principal Heanue, and Captain Bill Johns.

144.   The School Board exercises substantial control of the School and its students, including the JROTC program, because it controls the hiring, firing, discipline and training of teachers and staff, including JROTC staff, the discipline and instruction of students, and the School campus environment.

145.   The School Board failed to take any action against students engaged in harassment in retaliation against Ms. Danvers, and the Omissions of school administrators, detailed above, tacitly allowed this sex-based harassment.

146.   The student-on-student harassment continued unabated from March 2019 until October 2019.

147.   The situation eventually became so completely unbearable that Ms. Danvers was forced to transfer from the School and lose access to the JROTC program.

148.   By choosing to permit the continuing harassment to go unaddressed and unpunished, and, thereafter, choosing to allow the escalated attacks to proceed without consequence, Defendant School Board became liable for the acts of retaliation against Ms. Danvers and responsible for the clear and direct violation of her rights under Title IX.

149.   As a direct and proximate result of the School Board's actions and decisions detailed above that were sufficiently severe to interfere with the Plaintiff's ability to participate in and enjoy the benefits of the educational services offered by the School Board, Ms. Danvers was

denied access to a safe and secure educational environment in violation of Title IX and otherwise suffered the Damages stated above.

150.   **WHEREFORE**, Plaintiff, by Counsel respectfully requests that this Honorable Court enter judgment in her favor on Counts I(A) and I(B) and against Defendant School Board as follows:

a) Declare the School Board's conduct in violation of Title IX of the Education Amendments of 1972;

b) Award Plaintiff compensatory damages in amounts to be established at trial;

c) Award injunctive relief to be determined at trial, including but not limited to requiring the School Board to comply with Title IX; reinstate Ms. Danvers's lost JROTC credits and remedy her harassment-lowered grades; and further injunctive relief within the Court's discretion;

d) Award Plaintiff pre-judgment and post-judgment interest;

e) Award Plaintiff her court costs and expenses, including attorneys' fees, pursuant to 42 U.S.C. § 1988(b) and any other applicable statute or authority; and

f) Grant such other relief as this Court deems just and proper.

## COUNT II: RETALIATION IN VIOLATION OF TITLE IX

### (Against Defendant School Board)

151.   Plaintiff hereby incorporates the preceding and subsequent paragraphs of this Complaint by reference in this Count.

152.   Ms.   Danvers engaged in protected activity by reporting the sexual harassment, sexual assaults, and other harassment carried out against her by Defendant Serrano.

153.   Ms.   Danvers also engaged in protected activity by reporting the sexual harassment and suspected sexual assaults of other female students at the School.

154.   Ms.   Danvers also engaged in protected activity by reporting the retaliatory harassment committed by Defendant Serrano—including through a formal "Title IX" complaint— and retaliatory harassment committed by other students.

155.   This placed the School Board on notice of its responsibility to treat Ms.   Danvers in accord with its obligations under Title IX, including but not limited to its obligation not to engage in retaliation or condone retaliatory acts against Ms.   Danvers by non-agents over which it had a right and duty to control.

156.   The School Board had an obligation under Title IX to exercise control over students engaging in sexual harassment and to take appropriate disciplinary action against harassers for their creation of a sexually hostile environment.

### A.  Direct Retaliation by Serrano

157.   The School Board—through its agent Defendant Serrano—   retaliated against Ms. Danvers for her protected activity.

158.    This retaliation included summarily removing Ms.    Danvers from JROTC teams, excluding her from drill meets, inciting and instructing other students to shun Ms.    Danvers, lowering her grades arbitrarily, and other harassment as detailed above.

159.    These retaliatory actions were materially adverse, and made life almost unbearable for Ms.    Danvers in the JROTC program.  They were more than sufficient to deter a reasonable person from undertaking the protected activities previously noted.

160.    As detailed above, the School Board was also placed on ample notice of Defendant Serrano's retaliation, including by direct reports to Defendants Luttrell and Johns.

161.    By refusing to remedy Serrano's retaliation—including through the Omissions listed above—the School Board implicitly ratified his actions, and was at a minimum deliberately indifferent to his retaliation.  The retaliation is therefore also attributable to the School Board on this basis.

162.    As a result, Ms.    Danvers suffered the Damages detailed above.

**B.  Deliberate Indifference to Student-on-Student Harassment**

163.    Students at the school also retaliated against Ms.    Danvers specifically to punish her for the protected activity detailed above, by undertaking a coordinated program of harassment.

164.    This harassment is detailed above, including in Sections B, D, and F of the Fact Sections above.

165.    The harassment was severe, pervasive, objectively offensive, and created a hostile educational environment for Ms. Danvers based on her sex.

166.    The harassment was materially adverse, and was more than sufficient to deter a reasonable person from undertaking the protected activities.

167.    The School Board was placed on notice by numerous reports that Ms.    Danvers was being subjected to an organized campaign of student-on-student retaliatory harassment.

168.    The School Board had actual knowledge of the harassment through multiple reports by Ms.    Danvers, her parents, other students, and staff.

169.    Individuals with actual knowledge of    the student harassment had the authority and ability to investigate and take corrective and remedial action, including Principal Luttrell, Coordinator Wiley, School District HR Supervisor Sharon Bean, Director of High School Education Nereida Gonzalez-Sales, Assistant Principal Heanue, and Captain Bill Johns.

170.    The School Board exercises substantial control of the School and its students, including the JROTC program, because it controls the hiring, firing, discipline and training of teachers and staff, including JROTC staff, the discipline and instruction of students, and the School campus environment.

171.    The School Board failed to take any action against students engaged in harassment in retaliation against Ms.    Danvers, and the Omissions of school administrators, detailed above, tacitly allowed this sex-based harassment.

172.    The student-on-student harassment continued unabated from March 2019 until October 2019.

173.    The situation eventually became so completely unbearable that Ms.    Danvers was forced to transfer from the School and lose access to the JROTC program.

174.    By choosing to permit the continuing harassment to go unaddressed and unpunished, and, thereafter, choosing to allow the escalated attacks to proceed without consequence, Defendant School Board became liable for the acts of retaliation against Ms. Danvers and responsible for the clear and direct violation of her rights under Title IX.

28

175.     As a direct and proximate result of the School Board's actions and decisions detailed above that were sufficiently severe to interfere with the Plaintiff's ability to participate in and enjoy the benefits of the educational services offered by the School Board, Ms.     Danvers was denied access to a safe and secure educational environment in violation of Title IX and otherwise suffered the Damages stated above.

176.     **WHEREFORE**, Plaintiff Danvers by Counsel, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant School Board on Counts II(A) and II(B) as follows:

a)  Declare the School Board's conduct in violation of Title IX;

b)  Award Plaintiff compensatory damages in amounts to be established at trial;

c)  Award injunctive relief to be determined at trial, including requiring the School Board to comply with Title IX; reinstate Ms.     Danvers's lost JROTC credits and remedy her harassment-lowered grades; and further injunctive relief within the Court's discretion;

d)  Award Plaintiff pre-judgment and post-judgment interest;

e)  Award Plaintiff her court costs and expenses, including attorneys' fees, pursuant to 42 U.S.C. § 1988(b) and any other applicable statute or authority; and

f)  Grant such other relief as this Court deems just and proper.

## COUNT III - Violations of 42 U.S.C. § 1983 – Sexual Harassment

### (Against Defendant Serrano in his individual capacity)

177.     Plaintiff hereby incorporates the preceding and subsequent paragraphs of this Complaint by reference in this Count.

178.     The Fourteenth Amendment and 42 U.S.C. § 1983 protect against sexual harassment by state actors in an educational setting. *Jennings v. Univ. of N.C.*, 482 F.3d 686, 701

(4th Cir. 2007) ("equal protection right to be free from sexual harassment in an educational setting"); *Danvers v. Russell Cty. Sch. Bd.*, 292 F. Supp. 3d 690, 710 (W.D. Va. 2018) ("substantive due process right to bodily integrity and to be free from sexual abuse by a school employee, as well as [plaintiff's] property interest in a public education.")

179.    The School Board is a creation of the Commonwealth of Virginia.

180.    As an employee of the School in the JROTC program, Defendant Serrano was a state actor.

181.    By sexually harassing Ms. Danvers, a student under his care, Defendant Serrano abused his state position and thus acted under color of state law.

182.    As recounted above, Defendant Serrano subjected Ms.     Danvers to sexual harassment, sexual assault, and further retaliatory harassment (including purposeful initiation of student-on-student harassment) based on her sex.

183.    Defendant Serrano's conduct was severe, pervasive, objectively offensive, and created a hostile educational environment for Ms.     Danvers based on her sex.

184.    Defendant Serrano's conduct unreasonably interfered with Ms.     Danvers' educational activities, as detailed above.

185.    As a direct and proximate result of this willful, intentional and unlawful conduct, Ms. Danvers has suffered and continues to suffer the Damages detailed above.

186.    **WHEREFORE**, Plaintiff Danvers by Counsel, respectfully requests that this Honorable Court enter judgment in her favor on Count III, and against Defendant Serrano as follows:

      a) Declare Defendant Serrano's conduct to be in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment;

b)  Award Plaintiff compensatory damages in amounts to be established at trial;

c)  Award punitive damages against Defendant Serrano;

d)  Award injunctive relief to be determined at trial, including orders to preclude further harassment by Defendant Serrano and remedy prior acts; and further injunctive relief within the Court's discretion;

e)  Award Plaintiff pre-judgment and post-judgment interest;

f)  Award Plaintiff her court costs and expenses, including attorneys' fees, pursuant to 42 U.S.C. § 1988(b) and any other applicable statute or authority; and

g)  Grant such other relief as this Court deems just and proper.

## **COUNT IV - Violations of 42 U.S.C. § 1983 - Failure to Train**

### **(Against Defendant School Board)**

187.   Plaintiff hereby incorporates the preceding and subsequent paragraphs of this Complaint by reference in this Count.

188.   The School Board's failure to adequately train teachers, staff and students on prevention, detection, and refraining from sexual harassment caused the Damages suffered by Ms. Danvers in this case.

189.   On information and belief, the School Board continued to provide inadequate training—or no training at all—regarding sexual harassment until December 2020.

190.   In the year preceding Serrano's harassment of     Ms. Danvers, there were no less than four other incidents of alleged sexual abuse by School Board employees.

191.   During the 2017-18 school year alone, for example,     a Loudoun High School teacher sent hundreds of revealing photos of herself to several students and allegedly solicited sex

from them;[3] a Loudoun County middle school math teacher allegedly raped a 13-year old student inside a locked classroom;[4] another Loudoun County high school teacher allegedly carried on a sexual relationship with a student for two months;[5] and a Loudoun elementary school teacher was found to have been participating in an inappropriate relationship with a child.[6]

192.    In fact, three of the teachers were arrested in a 10-day span in 2019.[7]

193.    The School Board had actual knowledge of this conduct through multiple reports by news reports, affected parents, students, and staff.

194.    Individuals with actual knowledge of Defendant Serrano's conduct had the authority and ability to investigate and take corrective and remedial action, including Principal Luttrell, Coordinator Wiley, Assistant Principal Heanue, and Captain Johns.

195.    Nevertheless, the School Board did not choose to administer sexual harassment training to its staff until December 2020.

---

[3] "Loudoun County HS teacher arrested for alleged inappropriate communications with students: police," *Fox 5 Washington DC*, available at https://www.fox5dc.com/news/loudoun-county-hs-teacher-arrested-for-alleged-inappropriate-communications-with-students-police

[4] "Federal Lawsuit Alleges Assault, Cover Up at Trailside Middle School," *Loudoun Now*, available at https://loudounnow.com/2019/06/01/federal-lawsuit-alleges-assault-cover-up-at-trailside-middle/

[5] "Loudoun County teacher arrested for sexual relationship with student," *Fox 5 Washington DC*, available at https://www.fox5dc.com/news/loudoun-county-teacher-arrested-for-sexual-relationship-with-student.

[6] "Sheriff's office: Loudoun Co. teacher arrested for inappropriate relationship with child," *ABC 7*, available at https://wjla.com/news/local/loudoun-county-teacher-arrested-inappropriate-relationship-child.

[7] "Three teachers in one Northern Virginia school system arrested in 10 days," available at https://www.washingtonpost.com/local/education/three-teachers-in-one-northern-virginia-school-system-arrested-in-10-days/2019/05/11/ad1152e4-7347-11e9-9eb4-0828f5389013_story.html

196.    In addition, the School Board failed to implement and train employees in accordance with the "Guidelines for Prevention of Sexual Misconduct and Abuse in Virginia Public Schools" as detailed above.

197.    This failure to train constitutes deliberate indifference to the risk of sexual harassment.

198.    **WHEREFORE**, Plaintiff Danvers by Counsel, respectfully requests that this Honorable Court enter judgment in her favor on Count IV and against Defendant School Board as follows:

a)   Declare the School Board's conduct to be in violation of 42 U.S.C. § 1983;

b)   Award Plaintiff compensatory damages in amounts to be established at trial;

c)   Award injunctive relief to be determined at trial, including requiring the School Board to comply with 42 U.S.C. § 1983; reinstate Ms.    Danvers's lost JROTC credits and remedy her harassment-lowered grades; and further injunctive relief within the Court's discretion;

d)   Award Plaintiff pre-judgment and post-judgment interest;

e)   Award Plaintiff her court costs and expenses, including attorneys' fees, pursuant to 42 U.S.C. § 1988(b) and any other applicable statute or authority; and

f)   Grant such other relief as this Court deems just and proper.

### <u>COUNT V - Violations of 42 U.S.C. § 1983 - Equal Protection</u>

### (Against Defendant Johns)

199.    Plaintiff hereby incorporates the preceding and subsequent paragraphs of this Complaint by reference in this Count.

200.    The Equal Protection Clause and 42 U.S.C. § 1983 protect a right to be free from sexual harassment in an educational setting.

33

201.    The School Board is a creation of the Commonwealth of Virginia.

202.    As an employee of the School and head of the JROTC program, Defendant Johns was a state actor.

## A. Supervisory Liability

203.    As the head of the JROTC program, Defendant Johns had the authority to prevent Serrano's sexual harassment, and retaliatory harassment, but declined to do so.

204.    Defendant Johns gained actual notice of Serrano's *sexual* harassment at least as early as November 2, 2018 in his meeting with Ms. Danvers' parents.

205.    But he refused to take any action to prevent the harm or protect Ms. Danvers.

206.    Defendant Johns gained actual notice of Serrano's *retaliatory* harassment against Ms. Danvers at least as early as December 6, 2018, via his meeting with Mrs. Danvers.

207.    In that December 2018 meeting, and in the months that followed, Defendant Johns continued to refuse to protect Ms. Danvers, and violated his legal duties as a mandatory reporter of abuse allegations under Virginia law.

208.    Captain Johns' refusal to act was either an explicit authorization of Serrano's conduct—as commanding officer he could have stopped and reversed Serrano's retaliatory decisions immediately—or at best was deliberately indifferent.

209.    By acting in this way towards Ms. Danvers, a student under his care, Defendant Johns abused his state position and thus acted under color of state law.

210.    As a direct and proximate result of this intentional and unlawful conduct, Serrano continued his retaliatory harassment against Ms. Danvers, and Ms. Danvers suffered the Damages listed above.

### B. Deliberate Indifference to Student-on-Student Harassment

211.    As the head of the JROTC program, Defendant Johns had the authority to prevent the student campaign of retaliatory harassment but declined to do so.

212.    Defendant Johns gained actual notice of students' retaliatory harassment against Ms. Danvers at least as early as November 9, 2018, via correspondence from Mrs. Danvers.

213.    After that correspondence, and in the months that followed, Defendant Johns continued to refuse to protect Ms. Danvers from other students' retaliation.

214.    Captain Johns' refusal to act was either an explicit authorization of students' conduct—as commanding officer he could have stopped it immediately—and at best was deliberately indifferent.

215.    By refusing to act, Captain Johns effectively ratified the students' targeting of Ms. Danvers for retaliatory harassment, refusing to offer disciplinary consequences or even a word to students forbidding the conduct.

216.    Instead, he downplayed the harassment and did nothing about it.

217.    On information and belief, Captain Johns' deliberate indifference was motivated by discriminatory intent, and he treated Ms. Danvers' harassment differently because of her sex.

218.    As a direct result, the student-on-student harassment continued and grew worse, with no action by Captain Johns.

219.    By acting in this way towards Ms. Danvers, a student under his care, Defendant Johns abused his state position and thus acted under color of state law.

220.    As a direct and proximate result of this intentional and unlawful conduct, Ms. Danvers has suffered and continues to suffer the Damages detailed above.

**WHEREFORE**, Plaintiff Danvers by Counsel, respectfully requests that this Honorable Court enter judgment in her favor on Counts V(A) and (B), and against Defendant Johns as follows:

    a)  Declare Defendant Johns' conduct to be in violation of 42 U.S.C. § 1983 and the Equal Protection Clause;

    b)  Award Plaintiff compensatory damages in amounts to be established at trial as detailed above;

    c)  Award punitive damages against Defendant Johns in his personal capacity;

    d)  Award injunctive relief to be determined at trial, including orders to preclude further harassment under Defendant Johns' command of the JROTC program and remedy prior decisions within the JROTC program; and further injunctive relief within the Court's discretion;

    e)  Award Plaintiff pre-judgment and post-judgment interest;

    f)  Award Plaintiff her court costs and expenses, including attorneys' fees, pursuant to 42 U.S.C. § 1988(b) and any other applicable statute or authority; and

    g)  Grant such other relief as this Court deems just and proper.

### COUNT VI - Violations of 42 U.S.C. § 1983 - Equal Protection

**(Against Defendant Heanue)**

221.    Plaintiff hereby incorporates the preceding and subsequent paragraphs of this Complaint by reference in this Count.

222.    The Equal Protection Clause and 42 U.S.C. § 1983 protect a right to be free from sexual harassment in an educational setting.

223.    The School Board is a creation of the Commonwealth of Virginia.

224.    As an Assistant Principal of the School, Defendant Heanue was a state actor.

36

225.    As Assistant Principal, Defendant Heanue had had the authority to prevent the student campaign of retaliatory harassment—including specific authority to ensure a safe learning environment for students, and authority for student guidance and discipline—but declined to do so.

226.    Defendant Heanue gained actual notice of students' retaliatory harassment against Ms. Danvers at least as early as March 2019, via her meeting with Ms. Danvers.

227.    In that meeting, and in the months that followed, Defendant Heanue refused to protect Ms. Danvers from other students' retaliation.

228.    Defendant Heanue's refusal to act was particularly egregious because of her direct responsibility for student safety and discipline.

229.    By refusing to act, Defendant Heanue effectively ratified the students' targeting of Ms. Danvers for retaliatory harassment, refusing to offer disciplinary consequences or even a word to students forbidding the conduct.

230.    Instead, she downplayed the harassment and did nothing about it.

231.    On information and belief, Defendant Heanue's deliberate indifference was motivated by discriminatory intent, and she treated Ms. Danvers' harassment differently because of her sex.

232.    As a direct result, the student-on-student harassment continued and grew worse, with no action by Assistant Principal Heanue.

233.    By acting in this way towards Ms. Danvers, a student under her care, Defendant Heanue abused her state position and acted under color of state law.

234.    As a direct and proximate result of this intentional and unlawful conduct, Ms. Danvers has suffered and continues to suffer the Damages detailed above.

235.

236.    **WHEREFORE**, Plaintiff Danvers by Counsel, respectfully requests that this Honorable Court enter judgment in her favor on Count VI, and against Defendant Heanue as follows:

    a)  Declare Defendant Heanue's conduct to be in violation of 42 U.S.C. § 1983 and the Equal Protection Clause;

    b)  Award Plaintiff compensatory damages in amounts to be established at trial as detailed above;

    c)  Award punitive damages against Defendant Heanue in her personal capacity;

    d)  Award injunctive relief to be determined at trial, including orders to require training on student harassment and administrator obligations; and further injunctive relief within the Court's discretion;

    e)  Award Plaintiff pre-judgment and post-judgment interest;

    f)  Award Plaintiff her court costs and expenses, including attorneys' fees, pursuant to 42 U.S.C. § 1988(b) and any other applicable statute or authority; and

    g)  Grant such other relief as this Court deems just and proper.

## COUNT VII - Violations of 42 U.S.C. § 1983 - Equal Protection

### (Against Defendant Luttrell)

237.    Plaintiff hereby incorporates the preceding and subsequent paragraphs of this Complaint by reference in this Count.

238.    The Equal Protection Clause and 42 U.S.C. § 1983 protect a right to be free from sexual harassment in an educational setting.

239.     The School Board is a creation of the Commonwealth of Virginia.

240.    As Principal of the School, Defendant Luttrell was a state actor.

241.    As Principal, Defendant Luttrell had had the authority to prevent the student campaign of retaliatory harassment—including authority to ensure a safe learning environment for students, and authority for student guidance and discipline—but declined to do so.

242.    Defendant Luttrell gained actual notice of students' retaliatory harassment against Ms. Danvers at least as early as mid-February 2019, via calls from Mrs. Danvers.

243.    Beginning in February 2019, and in the months that followed, Defendant Luttrell continued to refuse to protect Ms. Danvers from other students' retaliation.

244.    Defendant Luttrell's refusal to act and Omissions as detailed above are particularly egregious because of her position as head of the School, and her responsibility for student safety and discipline.

245.    By refusing to act, Defendant Luttrell effectively ratified the students' targeting of Ms. Danvers for retaliatory harassment, refusing to offer disciplinary consequences or even a word to students forbidding the conduct.

246.    Instead, she downplayed the harassment and did almost nothing about it.

247.    On information and belief, Defendant Luttrell's deliberate indifference was motivated by discriminatory intent, and she treated Ms. Danvers' harassment differently because of her sex.

248.    As a direct result, the student-on-student harassment continued and grew worse, with no intervention by Principal Luttrell.

249.    By acting in this way towards Ms. Danvers, a student under her care, Defendant Luttrell abused her state position and acted under color of state law.

250.    As a direct and proximate result of this intentional and unlawful conduct, Ms. Danvers has suffered and continues to suffer the Damages detailed above.

251.   **WHEREFORE**, Plaintiff Danvers by Counsel, respectfully requests that this Honorable Court enter judgment in her favor on Count VII, and against Defendant Luttrell as follows:

a)  Declare Defendant Luttrell's conduct to be in violation of 42 U.S.C. § 1983 and the Equal Protection Clause;

b)  Award Plaintiff compensatory damages in amounts to be established at trial as detailed above;

c)  Award punitive damages against Defendant Luttrell in her personal capacity;

d)  Award injunctive relief to be determined at trial, including orders to require training on student harassment and administrator obligations; and further injunctive relief within the Court's discretion;

e)  Award Plaintiff pre-judgment and post-judgment interest;

f)  Award Plaintiff her court costs and expenses, including attorneys' fees, pursuant to 42 U.S.C. § 1988(b) and any other applicable statute or authority; and

g)  Grant such other relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Dated: September 8, 2021                    **MARIE and Joseph DANVERS, as next friend for minor CAROL DANVERS**

By Counsel:

Timothy P. Bosson, Esq. (VSB: 72746)
K. Craig Welkener, Esq. (VSB: 94493)
Robert Rose, Esq. (VSB: 81240)
BOSSON LEGAL GROUP, PC
8300 Arlington Blvd., Ste. B2
Fairfax, Virginia 22031
tbosson@bossonlaw.com

rrose@bossonlaw.com
cwelkener@bossonlaw.com
Phone (571) 775-2529
Fax (571) 775-2521

Benjamin Beliles, Esq. (VSB: 72723)
BELILES & ASSOCIATES, PLLC
1108 E. Main Street, Suite 1002
Richmond, VA 23219
benbeliles@gmail.com
Phone (703) 479-8220

*Counsel for Plaintiff*