IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MARIE and JOSEPH DANVERS,          )
as next friends of minor CAROL     )
DANVERS,                           )
                                   )
          Plaintiff,               )
                                   )   Civil Action No. 1:21-cv-1028 (RDA/JFA)
               v.                  )
                                   )
LOUDOUN COUNTY SCHOOL BOARD,       )
*et al.*,                          )
                                   )
          Defendants.              )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Carlos Serrano ("Serrano") and Defendants Muriel Heanue ("Heanue"), Bill Johns ("Johns"), the Loudoun County School Board ("School Board"), and Michelle Luttrell's ("Luttrell") Motions to Dismiss for Failure to State a Claim (Dkt. Nos. 14, 16). This Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). The Motion is now fully briefed and ripe for disposition. Considering the Motions together with Defendants' Memoranda in Support (Dkt. Nos. 15, 17), Plaintiff's Oppositions to both Motions (Dkt. Nos. 20, 21), and Defendants' Reply Briefs in support of their respective Motions (Dkt. Nos. 22, 23), this Court DENIES Defendant Carlos Serrano's Motion to Dismiss for Failure to State a Claim and GRANTS in part and DENIES in part the Heanue, Johns, School Board, and Luttrell Defendants' Motion to Dismiss for Failure to State a Claim for the reasons that follow.

## I. BACKGROUND

### A. Factual Background[1]

Marie and Joseph Danvers, as next friends for minor Plaintiff Carol Danvers,[2] filed a Complaint against Defendants alleging seven counts: (1) discrimination in violation of Title IX against the Loudoun County School Board; (2) retaliation in violation of Title IX against the Loudoun County School Board; (3) sexual harassment in violation of 42 U.S.C. § 1983 against Carlos Serrano; (4) failure to train in violation of 42 U.S.C. § 1983 against the Loudoun County School Board; (5) violations of 42 U.S.C. § 1983 and the Equal Protection Clause against Bill Johns; (6) violations of 42 U.S.C. § 1983 and the Equal Protection Clause against Muriel Heanue; and (7) violations of 42 U.S.C. § 1983 and the Equal Protection Clause against Michelle Luttrell.

In 2018, Carol Danvers was a 14-year-old freshman student at Loudoun County High School. Dkt. 1 ¶ 14. She was a part of the high school's Junior Reserve Officer Training Corps ("JROTC") program. *Id.* Through JROTC, Carol met Marine Gunnery Sergeant Carlos Serrano in August of 2018. *Id.* ¶ 16. Mr. Serrano—who was in his late 50s at the time—was Carol's Naval Science teacher that fall. *Id.*

In August of 2018, Serrano began "systemic grooming behavior of sexual harassment" towards Carol. *Id.* ¶ 18. This harassment included extra attention towards Carol and physical contact with Carol. *Id.* Serrano began to interact with Carol "more frequently" over time and treated her differently from male JROTC students, which included bringing her alone into his office and asking her details about her personal life. *Id.* ¶¶ 20-22. Serrano's "special attention"

---

[1] For purposes of considering the Motions, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] Carol, Marie, and Joseph Danvers are proceeding under pseudonyms. Dkt. 6.

made Carol "extremely uncomfortable." *Id.* ¶ 20.  Serrano's grooming behavior "escalated" after August of 2018. *Id.* ¶ 23.  For example, Serrano gave Carol various gifts and a nickname. *Id.* ¶¶ 23-24.  He also repeatedly reminded Carol to bring her swimsuit on a freshman JROTC trip, while not asking other students to bring a swimsuit. *Id.* ¶¶ 40-41.

 Serrano also inappropriately touched Carol on multiple occasions.  During one incident, Serrano put his arms around Carol's chest in an embrace, touching her breasts through her clothing; he then told her that the embrace had to stay a secret. *Id.* ¶ 27.  Serrano "continued to hug [Carol] on a regular basis" and hugged her "with his arms draped gratuitously across her chest, touching her breasts" "on many occasions." *Id.* ¶¶ 27-28.  *See also id.* ¶ 31 (describing another incident of Serrano wrapping his arms around Carol's chest from behind and touching her breasts).

Carol started to distance herself from Serrano in November of 2018 after telling her mother about the details of Serrano's actions in October of 2018. *Id.* ¶¶ 38, 42.  Carol's mother then attempted to address Serrano's actions.  She first reported Serrano's harassment to JROTC Master Chief Deanna Foust and Serrano on November 1, 2018. *Id.* ¶ 43.  One day later, on November 2, 2018, Serrano and Captain Bill Johns—the head of the JROTC program—met with Carol's parents. *Id.* ¶¶ 44, 202.  When Carol's parents "sought to raise" Serrano's behavior at this meeting, Serrano became "extremely defensive." *Id.* ¶ 44.

Carol's reports led to "escalating retaliation against" Carol by Serrano. *Id.* ¶ 49.  For instance, Serrano treated her poorly when he interacted with her in school and encouraged other students to ostracize her from peer activities.  *See, e.g.*, *id.* ¶ 50 (describing punitive measures Serrano took towards Carol); ¶ 51 (alleging that Serrano forbid students from attending her quinceñaera).

3

Carol's mother then again attempted to meet with Captain Johns on December 6, 2018, to "report Serrano's sexual harassment and retaliation," as well as the "student retaliation she was experiencing." *Id.* ¶ 52. In response, Captain Johns "downplayed her reports," "stonewalled her request for assistance," and "did not take any ameliorative action." *Id.* ¶¶ 52-53. As a result, the retaliation continued. *Id.* ¶ 53. *See also id.* ¶¶ 54-57 (describing instances of retaliation from Serrano and fellow students in the following months).

Carol's mother (Mrs. Danvers) then tried to take things to higher authority. After Carol told her about a text exchange between Serrano and a fellow student that worried Mrs. Danvers, Mrs. Danvers "repeatedly called Principal Luttrell's office requesting to meet," beginning on February 19, 2019. *Id.* ¶¶ 58-59. Mrs. Danvers told the principal's assistant that she wanted to report a teacher's "inappropriate conduct, sexual harassment, and retaliation against her daughter[,]" but she did not receive an immediate response. *Id.* ¶¶ 61-62. As a result, Mrs. Danvers filed a written Title IX complaint with the School Board on February 22, 2019. *Id.* ¶ 62. Principal Luttrell met with Mrs. Danvers on February 25, 2019, at which time Mrs. Danvers reported the sexual harassment and retaliation. *Id.* ¶ 63. Principal Luttrell then "[became] adversarial," asked whether the Danvers really wanted to file a Title IX complaint, and claimed she had met with Serrano, Captain Johns, and Master Chief Foust the prior week. *Id.* ¶¶ 63-65. Eventually, Carol and her parents met with the School Board's Department of Human Resources and Talent Development High School Coordinator, Angela Wiley, on March 4, 2019, to report the sexual harassment and retaliation. *Id.* ¶ 72. Serrano was placed on administrative leave the next day. *Id.* ¶ 73.

All the while, Carol was experiencing retaliation from Serrano and her peers. Before he was placed on paid leave, Serrano treated Carol unfairly in her JROTC activities.

4

*See id.* ¶¶ 67-71.  Furthermore, after Serrano was placed on leave, his son "recruited" fellow students "to harass and retaliate against [Carol]." *Id.* ¶ 76.  This took various forms throughout 2019, from preventing Carol from entering the school building to physical confrontation.  *See id.* ¶¶ 76-82 (detailing peer harassment after Serrano was placed on leave); *id.* ¶¶ 99-104, 108-111 (describing harassment after the new school year started in the fall of 2019).

Carol and her parents reported this peer harassment to the school on various occasions. Carol's mom reported the peer harassment on March 18, 2019, but Principal Luttrell told her the next day that she would not address those issues until the "personnel matter" was resolved.  *Id.* ¶ 85.  Mrs. Danvers then spoke to Assistant Principal Heanue about the peer harassment on March 26, 2019, and with Principal Luttrell on April 11, 2019.  *Id.* ¶¶ 86, 89.  Both the principal and assistant principal, according to Plaintiff, were dismissive of the reports.  *Id.* ¶¶ 87, 89.  Mrs. Danvers also reported both the sexual harassment and retaliation—and the School's alleged failure to address those issues—to the Loudoun County School Board, which did not provide a substantive response to Mrs. Danvers.  *Id.* ¶¶ 91-92.  Throughout April and May of 2019, Mrs. Danvers and Carol engaged with both the school administration and School Board employees about the harassment and retaliation.  *Id.* ¶¶ 93-96.  Although the school first found that Carol's complaints were "unfounded" in June of 2019, it later reversed course and in September of 2019 informed the Danvers that an investigation revealed Carol's allegations were "founded."  *Id.* ¶¶ 97-98.

Plaintiff alleges that she was adversely affected in multiple ways by the events she experienced at Loudoun County High School.  While she was in school, she suffered from headaches and panic attacks and had to see a therapist.  *Id.* ¶ 119.  She also could not participate in the JROTC program.  *Id.* ¶ 120.  Eventually, Carol transferred to another school.  *Id.* ¶ 117.

The effects from the harassment and retaliation lingered even after she transferred—she experienced "undue stress" and her grades at her new school "suffered as a result." *Id.* ¶ 121.

## B.  Procedural Background

On September 8, 2021, Plaintiff filed her Complaint.  Dkt. 1.  Defendant Serrano filed his Motion to Dismiss with an accompanying written brief on October 26, 2021.  Dkt. Nos. 14, 15.  Defendants Heanue, Johns, the School Board, and Luttrell also filed their joint Motion to Dismiss for failure to state a claim and a written brief on October 26, 2021.  Dkt. Nos. 16, 17. Plaintiff responded to both motions on November 9, 2021.  Dkt. Nos. 20, 21.  Defendant Serrano and Defendants Heanue, Johns, the School Board, and Luttrell replied in support of their respective motions on November 15, 2021.  Dkt. Nos. 22, 23.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint.  *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011).  "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal of the motion is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe

them in the light most favorable to [the plaintiff].'"  *Dao v. Faustin*, 402 F. Supp. 3d 308, 315

(E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir.

2015)).  Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not

be accepted.  *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v.*

*J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in

the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the

facts . . . .  Similarly, we need not accept as true unwarranted inferences, unreasonable

conclusions, or arguments.").  And "[g]enerally, courts may not look beyond the four corners of

the complaint in evaluating a Rule 12(b)(6) motion."  *Linlor v. Polson*, 263 F. Supp. 3d 613, 618

(E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

## III. ANALYSIS

### A. Count I – Discrimination in Violation of Title IX (Against the School Board)

The School Board argues that Plaintiff has not stated a Title IX discrimination claim.

First, the School Board argues that Plaintiff's complaint does not establish that she was sexually

harassed by Serrano.  Second (and relying principally on the arguments raised in  Serrano's

memorandum), it argues that even if Serrano did engage in sexual harassment towards Carol,

she has not established that the sexual harassment was "severe and pervasive" enough to meet

the relevant legal standard.  Finally, the School Board claims that the Complaint does not provide

any basis for imputing liability to it.

In response, Plaintiff first argues that that the facts pleaded in the Complaint establish

she was subject to harassment based on her sex.  She also claims that Serrano's actions, taken as

a whole, render the harassment "severe and pervasive."  Finally, Plaintiff argues that the facts

alleged do form a basis for imputing liability to the School Board and claims that Defendants rely on the wrong standard.

Plaintiff must satisfy four elements to adequately plead a Title IX discrimination claim: "(1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007). The School Board does not contest that Plaintiff has adequately pleaded the first element. Dkt. 17 at 11.

The "critical issue" in determining whether Plaintiff has adequately pleaded that she was subjected to harassment based on her sex is whether the allegations show that she was disadvantaged in a way that members of the other sex were not. *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003).[3] While harassment based on sex can be of a physical nature, offensive physical touching is not required for a sexual harassment claim to be viable. *Ocheltree*, 335 F.3d at 332. Indeed, "[s]exual harassment occurs when the victim is subjected to sex-specific language that is aimed to humiliate, ridicule, or intimidate." *Jennings*, 482 F.3d at 695. The alleged harasser's comments, however, need not be directed at the victim to be relevant to this determination. *Id.* (noting that sexually charged comments "not specifically directed at plaintiff" are relevant in determining whether plaintiff was subjected to sexual harassment). At bottom, what matters is if Plaintiff's allegations show that the comments "would

---

[3] *Ocheltree* involved a Title VII sexual discrimination claim. However, courts in the Fourth Circuit "look to case law interpreting Title VII . . . for guidance in evaluating a claim brought under Title IX." *Jennings*, 482 F.3d at 695.

not have been made to someone of the same sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

Plaintiff has adequately pleaded that she was subjected to both physical and verbal harassment based on her sex.  First, Plaintiff alleges that she was inappropriately touched by Serrano on several occasions.  Specifically, Plaintiff alleges that on multiple occasions, Serrano hugged her in a manner where he would touch her breasts through her clothing.  *See, e.g.*, Dkt. 1 at ¶¶ 27-28, 31.  While the School Board claims that "hugs without more are not sufficient to establish sexual harassment," Dkt. 23 at 3, Plaintiff has alleged more than that here.  Reading the allegations in a light most favorable to Plaintiff, she plausibly alleges that Serrano hugged her in a manner that was sexual—by hugging her from behind and touching her breasts. Furthermore, those hugs were not isolated incidents; Serrano also allegedly made various comments with sexual implications*. Cf. Shaver v. Dixie Trucking Co.,*, 181 F.3d 90 (table), 1999 WL 321388, at *3 (4th Cir. 1999) (dismissing sexual harassment claim because the "principal basis" for plaintiff's claim was "two hugging incidents" that had no evident sexual overtones, and the allegations did not include any comments from the harasser with implicit or explicit sexual references).

Plaintiff has also sufficiently alleged that she was subjected to verbal sexual harassment. This harassment includes allegations about general comments that Serrano is alleged to have made about girls in the JROTC program.  *E.g.*, Dkt. 1 ¶ 17 (alleging, among other comments, that Serrano said he was putting certain girls on the step team in front because they were the most attractive).  It also includes specific comments directed at Carol where it is reasonable to infer that Serrano "would not have . . . made [the comments] to someone of the same sex." *Oncale*, 523 U.S. at 80.  For example, Plaintiff alleges that Serrano "repeatedly" asked her

whether she was bringing her swimsuit on a trip but apparently did not ask any other students the same question. Dkt. 1 ¶¶ 40-41. Moreover, while the various allegations concerning Serrano's "special attention" to Carol and other JROTC girls may not, on their face, appear to be based on sex, it is reasonable to infer that they were based on sex, especially considering that male JROTC students noticed how girls were treated by Serrano. *See id.* ¶¶ 34-35 (describing how male JROTC students said that Carol and other girls in the program were Serrano's favorites and could get what they wanted if they slept with him); *see also id.* ¶ 33 (alleging that it was "well-known" that Serrano gave special attention to freshman girls). This context indicates that Serrano's actions were based on sex, as male JROTC students did not have similar actions and comments directed towards them.

In determining whether sex-based harassment is sufficiently "severe or pervasive" to create a hostile or abusive environment, a court examines both the subjective and objective perceptions of the harassment. *Jennings*, 482 F.3d at 696. Plaintiff alleges that she was uncomfortable with Serrano's actions. *See, e.g.*, Dkt. 1 at ¶ 20. The School Board does not appear to contest that Carol subjectively perceived the environment to be abusive or hostile.

As to the objective component, the inquiry asks whether the harassment has created "an environment that a reasonable person would find hostile or abusive." *Jennings*, 482 F.3d at 696 (internal quotation marks and citation omitted). In doing so, a court looks at all of the relevant circumstances, including the "positions and ages of the harasser and victim[,]" the frequency and severity of the harassment, and whether the harassment is physically threatening or humiliating. *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 627 (E.D. Va. 2011). To be sure, "[t]here is no mathematically precise test for determining if an environment is objectively hostile or abusive." *E.E.O.C. v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 328 (4th Cir. 2010) (internal

citation and quotation marks omitted).  But in the school context, harassment creates a hostile or abusive environment if "it can be said to deprive the victim[] of access to the educational opportunities or benefits provided by the school."  *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

Some factors cut in the School Board's favor.  From Plaintiff's Complaint, it appears that Serrano's sexual harassment lasted no longer than three months, as Plaintiff alleges that she began "distancing" herself from Serrano in November of 2018, which led to retaliation, rather than sexual harassment, from Serrano.  Dkt. 1 at ¶ 38.  Furthermore, from a purely theoretical perspective, Serrano's alleged harassment could have been more extreme: Plaintiff does not allege he made any explicit sexual comments to her, nor that he physically threatened her or engaged in sexual physical contact beyond the multiple incidents where he allegedly hugged her from behind.

But the relative ages and positions—and resulting power dynamics—of the alleged harasser and victim in this case are significant here.  The School Board primarily relies on various employment cases to argue that the specific actions Serrano allegedly took are legally insufficient for Plaintiff to establish that the sexual harassment was severe and pervasive.  *See, e.g.*, Dkt. 15 at 6-7 (citing various employment cases); Dkt. 23 at 4 (same).  However, the context of those workplace interactions is vastly different, and thus they are of little relevance in determining whether Serrano's actions created a hostile or abusive environment for a fourteen-year-old high school girl.  The power dynamic between Carol and Serrano "necessarily affect[ed] the extent to which [Serrano's] misconduct . . . breach[ed] Title IX's guarantee of equal access to educational benefits and . . . [had] a systemic effect" on Carol's experience at Loudoun County High School and the JROTC program.  *Davis*, 526 U.S. at 653.

Plaintiff has adequately alleged that Serrano's sexual harassment created an objectively hostile or abusive environment because she has pleaded facts that show that the harassment deprived her of "access to the educational opportunities or benefits provided by the school." *Id.* at 650. Specifically, Plaintiff has sufficiently alleged that Serrano's harassment had a "concrete[], negative, and substantial[]" impact on her ability to participate both in school and in the JROTC program. *Jennings*, 482 F.3d at 699 (at the summary judgment stage, holding that plaintiff showed a hostile environment by putting forward evidence of the harassment's effect on her ability to participate in the women's soccer program).

Plaintiff alleged that she was often extremely uncomfortable, suffered chronic headaches and panic attacks, had to leave school at times because of the harassment, and began seeing a therapist. Dkt. 1 ¶¶ 20, 119; *see also Jennings*, 482 F.3d at 699 (holding that plaintiff met burden of showing concrete, negative, and substantial effects of harassment through deposition testimony about anxiety, humiliation, and impact on academic and athletic performance). In fact, Plaintiff alleges that she was ultimately forced to transfer schools because of the alleged harassment. Dkt. 1 ¶ 121. At the motion-to-dismiss stage, this fact tends to suggest that Carol was deprived access to the school's educational opportunities and benefits because of Serrano's harassment. *See Buettner-Hartsoe v. Baltimore Lutheran High Sch. Ass'n*, No. RDB-20-3132, 2021 WL 2580385, at *16 (D. Md. June 23, 2021) ("[E]ach of these students allege they had to complete their education elsewhere because of their experiences, which suffices at [the Motion to Dismiss stage] to show that they were denied access to the educational opportunities or benefits provided by the school.").

Finally, Plaintiff's Complaint must also show some basis for imputing liability to the School Board. To do so, Plaintiff must plead that a school official who "has authority to address

the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination . . . and fails adequately to respond." *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 290 (1998). Put simply, Plaintiff has to allege that a school official: (1) had actual knowledge of the harassment; (2) had the authority to address the alleged discrimination; and (3) either failed to adequately respond to the discrimination or displayed deliberate indifference to the discrimination. *Jennings*, 482 F.3d at 700 (citing *Gebser*, 524 U.S. at 290).

Plaintiff sufficiently alleges that multiple School Board officials received actual knowledge of Mr. Serrano's alleged harassment. Construing the Complaint in the light most favorable to Plaintiff, the allegations show that Captain Johns received actual knowledge of the harassment no later than December 6, 2018, and possibly as early as November 2, 2018. Dkt. 1 ¶¶ 44, 52. Principal Luttrell's office received notice of the sexual harassment allegations on February 19, 2019, and the principal herself was informed of them no later than February 25, 2019. *Id.* ¶¶ 59-63. Finally, a School Board HR employee, Ms. Angela Wiley, received notice of Serrano's alleged harassment on March 4, 2019. *Id.* ¶ 72.[4]

Determining whether an official who was informed of harassment has the authority to address it is a fact-intensive inquiry. But contrary to the School Board's arguments, an official need not be "high enough up the chain-of-command" so that "his acts constitute an official decision by the school district itself . . . ." Dkt. 17 at 13 (quoting *Floyd v. Waiters*, 171 F.3d 1264, 164 (11th Cir. 1999)). Rather, the individual who receives notice only needs to be

---

[4] The Complaint alleges various other meetings between Mrs. Danvers and Loudoun County High School or School Board officials after February of 2019. *E.g.*, Dkt. 1 at ¶ 84 (alleging that on March 18, 2019, Mrs. Danvers emailed Sharon Bean about the "hostile environment" Carol was still experiencing). However, Plaintiff does not allege that that the Danvers reported the sexual harassment at those times; those allegations are made in the context of the retaliation claims.

someone who has the ability to take corrective action in some manner, which "can take many forms[,]" including "passing the report up the chain of responsibility . . . ." *Andrews v. Bd. Of Educ. of Prince George's Cnty.*, 513 F. Supp. 3d 648, 656 n.8 (D. Md. 2021); *see also Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 173 (3d Cir. 2002) (holding that an official who has the ability to institute corrective measures is someone who would have the ability to report findings to a superior or to the appropriate school board official). Corrective action could also include "conducting an independent investigation" or reporting the alleged conduct "to the School Board or to law enforcement." *Doe v. Russell Cnty. Sch. Bd.*, No. 1:16-cv-45, 2017 WL 1374279, at *6 (W.D. Va. April 13, 2017).

Plaintiff has alleged that both Captain Johns and Principal Luttrell had the authority to address the alleged discrimination.[5] Principals are generally officials with such authority. *Willey v. Bd. Of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 661 (D. Md. 2021). And Plaintiff alleges that Captain Johns not only had the ability to report the allegations to law enforcement and/or his superiors, but that he had the affirmative obligation to do so. Dkt. 1 ¶¶ 11, 53. Furthermore, Plaintiff alleges that Captain Johns is the head of Loudoun County School Board's JROTC program. Dkt. 1 ¶ 11. Having such a position, Captain Johns had the ability to discuss the allegations with Serrano or Carol. Teachers have the authority to address discrimination in the context of peer-on-peer harassment. *Willey*, 557 F. Supp. 3d at 661 (citing *Davis*, 526 U.S. at 646-47). Likewise, a school official who exercises control over a harassing teacher has the authority to address discrimination in the context of teacher-on-student harassment. Plaintiff has

---

[5] Plaintiff also alleges that Coordinator Wiley had the "authority and ability to investigate and take corrective and remedial action." Dkt. 1 ¶ 143. But she provides no facts supporting that allegation, rendering it conclusory.

sufficiently pleaded that both Principal Luttrell and Captain Johns had the authority to address the alleged discrimination.

Finally, to survive the School Board's motion to dismiss, Plaintiff must show that Principal Luttrell or Captain Johns either failed to adequately respond to Serrano's harassment or displayed deliberate indifference to his harassment. *Jennings*, 482 F.3d at 700. A school official does not adequately respond to reported harassment when she takes no action in response or is dismissive of complaints from students. *See id.* at 700-701. And an official is deliberately indifferent to such harassment when she does "not engage in efforts that [are] reasonably calculated to end the harassment." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 689 (4th Cir. 2018) (internal citation and quotation marks omitted).

Plaintiff has met her burden here. Accepting the facts alleged in Plaintiff's Complaint as true, both Principal Luttrell and Captain Johns did not adequately respond to reports of sexual harassment. Captain Johns had knowledge of Carol's allegations in December of 2018 at the latest. Dkt. 1 ¶ 52. According to Plaintiff, he responded by "downplay[ing] [Mrs. Danvers'] reports" and "stonewall[ing] her request for assistance." *Id.* Thereafter, he allegedly took no action whatsoever. *Id.* ¶ 53. Similarly, Principal Luttrell's office was notified that Mrs. Danvers wanted to report a teacher's sexual harassment as early as February 19, 2019. *Id.* ¶¶ 59-61. But it was not until Mrs. Danvers filed a Title IX complaint with the School Board on February 22, 2019, that Principal Luttrell agreed to meet with Mrs. Danvers about her concerns. *Id.* ¶¶ 62-63. Even then, at their February 25, 2019 meeting, Principal Luttrell allegedly became "adversarial" and "question[ed]" whether the Danvers wanted to file a Title IX complaint. *Id.* ¶ 64. Following that meeting, Principal Luttrell evidently took no action, just like Captain Johns. *Id.* ¶ 66. Only

once Carol and her parents met with someone from the School Board on March 4, 2019, was any action taken, as Serrano was placed on leave the next day.  *Id.* ¶¶ 72-73.

In sum, Plaintiff claims that school officials knew about her claims of sexual harassment by, at the very latest, early December of 2018—three months before anything was done.  For those three months, school officials did nothing, leaving Carol vulnerable to further sexual harassment from Serrano.  Such a failure to respond and instead perfunctorily address complaints was held to be an inadequate response in *Jennings*.  482 F.3d at 700-01.  And those actions—or, more accurately, the lack thereof—are certainly not "efforts that were reasonably calculated to end the harassment."  *Hurley*, 911 F.3d at 689.

The School Board focuses on the fact that all of Serrano's harassment occurred before any school official was informed about the situation.  *See* Dkt. 17 at 13-14; Dkt. 23 at 4-5.  Based on the Complaint, it is correct— Serrano's sexual harassment appears to have ended around November of 2018, and Mr. Johns was informed around that time, while Principal Luttrell was informed months later.  But that fact carries no legal significance here.  In fact, the Fourth Circuit recently rejected that very argument and held that an educational institution may be held liable for discrimination under Title IX when its indifference makes its students "liable or vulnerable to harassment[,]" even if no harassment occurs after the report of sexual harassment.  *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 273 (4th Cir. 2021).  In *Doe*, the Fourth Circuit noted that even a single incident of harassment can give rise to liability if the victim is denied access to educational benefits and is vulnerable to further harassment.  *Id.* at 273-74.  That is what Plaintiff has alleged here.

Plaintiff has adequately alleged facts to meet the *Jennings* factors.  Accordingly, she has pleaded a facially valid Title IX discrimination claim against the School Board.

B. Count II – Retaliation in Violation of Title IX (Against the School Board)

The School Board also argues that Plaintiff has not validly pleaded a Title IX retaliation claim.  According to the School Board, Plaintiff's allegations do not support the conclusion that she suffered an adverse action attributable to the School Board.  Specifically, it claims that Plaintiff cannot show that the School Board acted with deliberate indifference in response to claims of retaliation.

Plaintiff responds by pointing to the numerous alleged instances where she reported retaliatory actions to school officials.  In effect, her argument hews closely to her argument why the School Board is liable for Title IX sexual harassment: when school officials received reports of retaliatory harassment, they did nothing, leaving her vulnerable to further harassment and displaying deliberate indifference towards the allegations.

To sufficiently allege a Title IX retaliation claim, Plaintiff must plead two elements: (1) [she] "engaged in protected activity under Title IX" and (2) "as a result of [her] protected activity . . . [she] suffered an adverse action attributable to the defendant educational institution." *Hurley*, 911 F.3d at 694.  The School Board does not appear to contest that Plaintiff engaged in Title IX protected activity.  Dkt. 17 at 14-15.

Plaintiff alleges two forms of retaliatory harassment.  First, she alleges that Serrano retaliated against her for complaining that he sexually harassed her.  And second, she alleges that students at Loudoun County High School retaliated against her for the same reason.  As to Serrano, the School Board admits that Carol has sufficiently pleaded that Serrano retaliated against her for reporting the sexual harassment (*i.e.* that she suffered an adverse action), but

contests whether that harassment is attributable to the School Board.[6]   As to the student retaliatory harassment, the School Board claims that Plaintiff has not adequately pled that the peer harassment was a *result* of her Title IX activity, and also argues that the student harassment is not attributable to the School Board.  The Court addresses each argument in turn.

As with Plaintiff's sexual harassment claim, retaliatory harassment is attributable to the School Board if it acted with 'deliberate indifference" to Serrano's alleged retaliatory harassment.  *Goldstein v. Univ. of Md.*, No. CCB-18-2376, 2019 WL 4467035, at *13 (D. Md. Sept. 17, 2019); *see also Hurley*, 911 F.3d at 695 (similar).  To show that the School Board acted with deliberate indifference, Plaintiff must adequately plead that once school officials acquired knowledge of Serrano's retaliatory harassment, they took no action to "address and curtail the retaliatory activities."  *Hurley*, 911 F.3d at 695-96.  A "half-hearted investigation or remedial action" does not "suffice to shield a school from liability."  *Fairfax Cnty. Sch. Bd.*, 1 F.4th at 271 (internal quotation marks and citation omitted).

Plaintiff has adequately pleaded that the School Board acted with deliberate indifference to her reports of Serrano's retaliatory harassment.  When Mrs. Danvers raised Serrano's alleged sexual harassment of Carol with Captain Johns on December 6, 2018, she evidently also raised Serrano's retaliation against Carol.  Dkt. 1 ¶ 52.  And Plaintiff alleges that Captain Johns' response to both of those reports was the same: he "downplayed" them, "stonewalled" Mrs. Danvers, and "insist[ed]" that she could not prove that Serrano was retaliating against Carol.  *Id.* Similarly, Mrs. Danvers allegedly reported Serrano's retaliation when she met with Principal Luttrell on February 25, 2019.  *Id.* ¶ 63.  Principal Luttrell apparently did nothing in response.

---

[6] The Fourth Circuit has recognized that retaliatory harassment can be a materially adverse action in both the Title VII and Title IX contexts.  *Hurley*, 911 F.3d at 694.

*Id.* ¶ 66.  While the School Board notes that Serrano was placed on leave on March 5, 2019, that does not cure Captain Johns and Principal Luttrell's alleged inaction.  *See Fairfax Cnty. Sch. Bd.*, 1 F. 4th at 272-73 (noting deliberate indifference can be found when school officials "trivialize[] and dismiss[]" reports, fail to adequately investigate reports, or fail to "even take the minimal step of checking in" on the victim).

The School Board can also be held liable for Loudoun County High School students' retaliatory harassment.  To adequately plead a claim premised on that theory, Plaintiff must first show that the harassment she endured was a result of her reporting Serrano's sexual harassment.  *See Hurley*, 911 F.3d at 694 (requiring that Title IX retaliation plaintiffs show a link between the adverse action and protected activity); *see also Coleman v. Md. Special Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (same for Title VII).

Plaintiff claims that school officials were aware of student-on-student retaliatory harassment as early as November of 2018, pointing to the November and December meetings with Captain Johns.  However, the Complaint does not sufficiently allege that those meetings included reports of student harassment related to Plaintiff's complaints about Serrano.  Indeed, those November and December meetings were the first time that the Danvers reported the alleged harassment to the school; accordingly, it would be illogical to conclude that any student retaliatory harassment that occurred prior to those meetings was a result of the reports.  And Plaintiff has not alleged that her fellow students were contemporaneously aware of the content of the meetings between Mrs. Danvers and Captain Johns in late 2018.  Thus, Plaintiff cannot plausibly argue that student harassment around that time was a result of the reports in late 2018.

However, Plaintiff has still adequately pleaded that some of the student harassment she endured was a result of the complaints against Mr. Serrano.  She alleges that Serrano's son

"recruited" fellow students—specifically, A.E. and E.E.—to harass her after Serrano was placed on leave, Dkt. 1 ¶¶ 76-77, and it is reasonable to infer from the allegations that the harassment was a result of her reports. Furthermore, Plaintiff alleges that students yelled "snitch" or "I hate snitches" at her. *Id.* ¶ 82. Those allegations indicate that students harbored hostility towards Carol because of her sexual harassment reports once Serrano was placed on leave. Accordingly, Plaintiff has adequately alleged a link between certain instances of student harassment and the protected activity.

Plaintiff must also plead that the School Board acted with deliberate indifference towards known instances of harassment from her fellow students. The standard Plaintiff must meet is no different from what she had to plead with respect to both the Title IX discrimination claim and the Title IX retaliation claim premised on deliberate indifference to Mr. Serrano's harassment.

Plaintiff has adequately pleaded that the School Board was also deliberately indifferent towards her reports of student-on-student retaliatory harassment. Plaintiff alleges that the Danvers discussed the student retaliatory harassment with school officials on at least five occasions in the spring of 2019: on March 18, 2019, with Sharon Bean, the School District's HR Supervisor, Dkt. 1 ¶ 84; with Principal Luttrell on March 19, 2019, *id.* ¶ 85; with Assistant Principal Heanue on March 26, 2019, *id.* ¶ 86; again with Principal Luttrell on April 11, 2019, *id.* ¶ 89; and with the School District's Director of High School Education sometime after April 12, 2019, *id.* ¶¶ 90-91.[7] While Plaintiff started reporting the retaliatory harassment in mid-

---

[7] The Complaint also discusses other meetings between the Danvers and school officials. *See, e.g.*, Dkt. 1 ¶ 90 (alleging that Assistant Principal Heanue "asked" Carol to "re-report" the peer retaliation on April 12, 2019). But it is not clear from those allegations whether the Danvers actually reported the peer retaliatory harassment during those interactions. Only in the above-identified meetings did Plaintiff sufficiently allege that the Danvers reported the retaliatory harassment.

March, the school district apparently dismissed the reports and took no action throughout March and April.  *See, e.g.*, *id.* ¶¶ 85, 87-89, 92 (allegations that show that school officials were apathetic and/or nonresponsive to Plaintiff's reports.)  And the investigation the School Board did undertake in May and June appears to have been "half-hearted[,]" as Plaintiff alleges that the School Board did not allow her to explain her claims.  *Fairfax Cnty. Sch. Bd.*, 1 F. 4th at 271; Dkt. 1 ¶ 97.  Furthermore, Plaintiff sufficiently alleges that the reports, and the School Board's non-responsiveness, continued once school resumed in the fall of 2019.  *See, e.g.*, Dkt. 1 ¶ 105 (alleging that Mrs. Danvers reported further retaliatory harassment, with no action taken by school officials).

Because Plaintiff has sufficiently alleged that the School Board was deliberately indifferent to retaliatory harassment by Serrano and her peers, she has adequately alleged a Title IX retaliation claim against the School Board.

C. Count III – Sexual Harassment in Violation of 42 U.S.C. § 1983 (Against Carlos Serrano)

Defendant Carlos Serrano argues that Plaintiff has not adequately pleaded a sexual harassment claim against him.  He primarily argues that any harassment was not sufficiently severe or pervasive to give rise to liability under the statute.  Plaintiff responds by arguing that the allegations against Serrano, if taken as true, show that his actions unreasonably interfered with her educational activities.  Serrano also argues that he is entitled to qualified immunity on the sexual harassment claim.  Plaintiff disagrees.

Carol's sexual harassment claim against Serrano is rooted in the Equal Protection Clause.[8]  To survive a motion to dismiss, Plaintiff must allege that (1) Serrano was a state actor;

---

[8] Serrano's opening brief addressed the viability of Plaintiff's sexual harassment claim based on Substantive Due Process, as well; however, Plaintiff expressly disclaimed any claim

(2) Serrano harassed her because of her sex; and (3) the harassment was sufficiently severe or pervasive to interfere unreasonably with her educational activities.  *Jennings*, 482 F.3d at 701. Serrano does not contest that he was a state actor.

As to the second and third elements, Plaintiff has sufficiently pleaded that Serrano harassed her because of her sex and that that harassment was sufficiently severe or pervasive, as set forth above in Section III.A.  *See Jennings*, 482 F.3d at 701. (referring to Title IX discrimination analysis in analyzing Section 1983 Equal Protection claim against alleged harasser).  Accordingly, Plaintiff has stated a valid sexual harassment claim against Serrano.

Serrano also argues that he is entitled to qualified immunity.  There is a two-step sequence for determining whether an official is entitled to qualified immunity.  "First, a court must decide whether the facts that a plaintiff has alleged … make out a violation of a … right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Second, if that step is satisfied, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  As shown above, Plaintiff has pled a violation of a right—a right to be free from sexual harassment, specifically inappropriate touching and verbal sexual harassment.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he … is doing violates that right."  *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018) (internal citation and quotation marks omitted).  This is considered "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal citation and quotation marks omitted).

---

based on Substantive Due Process, so the Court does not address such a claim here.  Dkt. 20 at 1 n.1.

Here, Carol's rights were clearly established.  A student's right to be free from offensive touching was established in *Davis*.  *See* 526 U.S. at 653 (holding that plaintiff could allege sexual harassment when her daughter experienced "objectively offensive touching").  That is why "[c]ourts routinely deny qualified immunity to teachers who allegedly touch a student in a sexually inappropriate manner."  *S.T. v. Yakima Sch. Dist. No. 7*, No. 11-cv-3085-TOR, 2013 WL 8017197 (E.D. Wash. March 5, 2013) (collecting circuit and district court cases).

Similarly, Carol's right to be free from verbal sexual harassment was also "clearly established."  The *Jennings* Court held that "[s]exual harassment occurs when the victim is subjected to sex-specific language that is aimed to humiliate, ridicule, or intimidate." 482 F.3d at 695.  While it is true that *Jennings* had a different factual context, "there need not exist a case on all fours with the facts at hand" for a right to be clearly established.  *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 401 (4th Cir. 2015).  "Rather, the unlawfulness must be apparent in light of pre-existing law." *Trulock v. Freeh*, 275 F.3d 391, 400 (4th Cir. 2001).  And *Jennings* made apparent that when an individual's language "target[s] young women because of their sex[,]" that language constitutes sexual harassment.  482 F.3d at 696.

Finally, Serrano has "done nothing more than offer ... bald assertions that [he] is entitled to qualified immunity" because Carol's rights were not clearly established at the time.  *Trulock*, 275 F.3d at 406.  At the motion-to-dismiss stage, those bald assertions are not enough to dismiss the sexual harassment claim on qualified immunity grounds.  *Id.*

D. Count IV – Failure to Train in Violation of 42 U.S.C. § 1983 (Against the School Board)

The School Board also argues that Plaintiff has not stated a valid claim for failure to train. The School Board asserts that Plaintiff has not alleged that the School Board exhibited a "deliberate indifference" to students' constitutional rights by being aware of, and acquiescing in,

a pattern of constitutional violations.  According to the School Board, Plaintiff's allegations are insufficient to establish that the School Board failed to train employees on an obvious constitutional duty that the School Board's employees were certain to face.

In reply, Plaintiff points to multiple instances of alleged sexual misconduct by teachers in Loudoun County Public Schools as evidence that there is a pattern of similar incidents that the School Board has failed to address.  Plaintiff also argues that she has sufficiently pleaded that the School Board has failed to train its employees on sexual harassment issues.

In certain circumstances, a local government's failure to train its employees can give rise to liability.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989).  However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Nevertheless, to state a claim for a failure to train, a plaintiff must plead: "(1) [that] the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) [that] the supervisor failed to train properly the subordinates[,] thus illustrating a deliberate indifference to the rights of the persons with whom the subordinates come into contact; and (3) [that] this failure to train actually caused the subordinates to violate the plaintiff's rights."  *Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F. Supp. 3d 721, 726 (E.D. Va. 2014).  As shown in Part III.A, Plaintiff has adequately pleaded the first element.

Plaintiff can plead that the School Board failed to properly train its subordinates in a manner exhibiting deliberate indifference in two ways.  First, Plaintiff can plead that School Board policymakers "were aware of, and acquiesced in, a pattern of constitutional violations."  *Id.*  Second, Plaintiff can allege facts that show that the School Board failed to "train its

24

employees concerning an obvious constitutional duty that the particular employees are certain to face." *Id.*

Plaintiff has not pleaded that the School Board policymakers acquiesced in a pattern of constitutional violations.  To do so, Plaintiff must "establish the existence of a pattern of incidents sufficiently similar to each other, or to the one" in her case.  *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 538 (E.D. Va. 2015) (internal quotation marks and citation omitted).  All that Plaintiff can point to is allegations of sex crimes against Loudoun County public school teachers generally, and the arrest of three teachers between 2017 and 2019.  Dkt. 1 ¶¶ 191-92.  But Plaintiff's own description of those allegations—which include sex solicitation, rape, and inappropriate relationships—reveal that those events are not "sufficiently similar" to each other, nor to the case at hand.  *Moody*, 93 F. Supp. 3d at 538.  This case involves allegations of inappropriate touching and verbal sexual harassment; significantly dissimilar from the circumstances in the cases Plaintiff cites.  Moreover, Plaintiff has not specified how School Board policymakers acquiesced in these violations; she does not allege that the School Board took no action or ignored these events.

However, Plaintiff has sufficiently pleaded that the School Board failed to train its employees on an obvious constitutional duty that they are certain to face.  Plaintiff alleges that the School Board did not administer sexual harassment training to its staff until December of 2020 and did not adopt statewide guidelines pertaining to the prevention of sexual misconduct and abuse.  Dkt. 1. ¶¶ 195-96.  Schoolteachers have the "obvious" constitutional duty not to discriminate against or harass their students on the basis of sex, and teachers in public schools are "certain" to face that duty.  *Gallimore*, 38 F. Supp. 3d at 726.  Plaintiff's allegation that Loudoun County did not administer sexual harassment training to its staff until December of

2020 is sufficient to meet its burden to plead that the School Board failed to adequately train its employees. *Cf. Moody*, 93 F. Supp. 3d at 539-40 (holding that an allegation that a city did not train its officers on the use of force vis-à-vis fleeing suspects was sufficient to plead a failure-to-train claim at the motion to dismiss stage); *Johnson v. City of Richmond*, No. 3:04-cv-340, 2005 WL 1793778, at *7-*10 (E.D. Va. June 24, 2005) (similar).

The School Board's only response is that Plaintiff's allegation about the administration of sexual harassment training was made "upon information and belief," rendering it conclusory. But making an allegation "upon information and belief" does not mean that the Court has to necessarily disregard it as conclusory. *McNeil v. Faneuil, Inc.*, No. 4:15-cv-81, 2016 WL 11673835, at *4 (E.D. Va. March 1, 2016). Rather, the Court must examine whether the statement is a factual allegation; if so, then the Court must accept it as true. In fact, making an allegation "upon information and belief" is appropriate "where the facts are peculiarly within the possession and control of the defendant . . . ." *Mystic Retreat Med. Spa & Weight Loss Ctr. v. Ascentium Cap. LLC*, No 1:21-cv-00515, 2022 WL 2820843, at *3 (M.D.N.C. July 19, 2022); *see also Mann Bracken, LLP v. Exec. Risk Indemn., Inc.*, No. DKC 15-1406, 2015 WL 5721632, at *7 (D. Md. Sep. 28, 2015) (similar). Here, the allegation that the School Board did not administer sexual harassment training until December of 2020 is not conclusory—it must at this stage be accepted as a factually-based allegation. And that fact is peculiarly within the possession and control of the School Board: it alone knows when it did (or did not) administer sexual harassment training.

But Plaintiff has not sufficiently pleaded that the School District's failure to train its employees on sexual harassment actually caused the school officials to violate her rights. To do so, Plaintiff must allege that the School Board's training failure was "such to make the specific

violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run." *Moody*, 93 F. Supp. 3d at 540.  Indeed, Plaintiff does not address this element in her brief. And the Complaint does not allege facts that show Serrano's violation was "almost bound to happen, sooner or later." *Id.*  Plaintiff does not plead a "specific deficiency" in the training; rather, what she pleads is closer to "general laxness." *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987).  The mere allegation that the School Board failed to administer sexual harassment training, without allegations connecting that failure to Serrano's alleged sexual harassment, dooms Plaintiff's failure-to-train claim. *See Chennault v. Mitchell*, 923 F. Supp. 2d 765, 788 (E.D. Va. 2013) (dismissing plaintiff's complaint because it failed to "allege the requisite causal link" between the policies and the injury, making the failure-to-train claim inadequate).

E. Counts V, VI, and VII – Section 1983 Equal Protection Violations (Against Johns, Heanue, and Luttrell)

The Johns, Heanue, and Luttrell Defendants (collectively, the "School Officials") argue that Plaintiff has failed to state a valid Section 1983 Equal Protection claim against each of them. The School Officials first argue that the claims against them in their official capacities are duplicative of the claims against the School Board and should thus be dismissed.  Next, as it pertains to Johns, they argue that there was no sexual behavior towards Carol that Johns was obligated to protect her from.  And as it relates to Luttrell and Heanue, they argue that Plaintiff's Equal Protection claims are solely based on a failure to protect her from retaliation, which is rooted in the First Amendment, not the Equal Protection Clause.  Finally, they argue that all three School Officials are entitled to qualified immunity.

Plaintiff responds by asserting that the individual-capacity allegations demonstrate that the School Officials violated her Equal Protection rights.  She contends that her Equal Protection

allegations lie in the Fourteenth Amendment, not the First Amendment, as she does not allege that the School Officials retaliated against her.  Finally, she claims that the School Officials are not entitled to qualified immunity because the right to be free from sexual abuse had been clearly established by the time of the underlying events.

The School Officials are correct that Plaintiff cannot pursue a claim against them in their official capacity, and Plaintiff does not appear to disagree with the School Officials' argument that the official-capacity claims are duplicative.  The official-capacity claims must accordingly be dismissed.  *See Kentucky v. Graham*, 473 U.S. 159, 164 (1985) (explaining that official capacity suits are another way of pleading an action against an entity the official is an agent of).

The parties appear to disagree about whether Carol's Equal Protection rights lie in the First or Fourteenth Amendments.  However, Plaintiff's response to the School Officials' Motion to Dismiss makes clear that she is only pursuing Equal Protection claims pursuant to her Fourteenth Amendment right to be free from sexual harassment. Dkt. 21 at 17-18.  She expressly disclaims any Equal Protection claims predicated upon any purported retaliation from the School Officials.  *Id.*  As a result, the only allegations that are relevant to the Equal Protection claims are those related to Serrano's sexual harassment of Carol.

Plaintiff's Equal Protection claims are based on the officials' deliberate indifference to Serrano's harassment.  Dkt. 1 ¶¶ 211-220, 225-231, 241-247.  To successfully plead an Equal Protection claim for deliberate indifference to sexual harassment,, Plaintiff must adequately allege three elements: (1) she was subjected to discriminatory harassment; (2) the school administrator responded to the harassment with deliberate indifference; and (3) the deliberate indifference was motivated by a discriminatory intent.  *Hurley*, 911 F.3d at 702-03.  As explained

in Part III.A, the first element has been adequately pleaded: Plaintiff has sufficiently alleged that she was subjected to discriminatory peer harassment.

As to the second element, Plaintiff has only sufficiently pleaded that Captain Johns and Principal Luttrell responded to Mr. Serrano's harassment with deliberate indifference, as shown in in Part III.A.  Plaintiff does not allege that Assistant Principal Heanue knew about Serrano's sexual harassment—Plaintiff has only pleaded that Assistant Principal Heanue knew about the retaliatory student harassment, which is not relevant here.

To allege that Captain Johns or Principal Luttrell were motivated by a "discriminatory intent" in acting deliberately indifferent, it is sufficient for Plaintiff to allege that the School Officials "sought to downplay the harassment" and "made no effort" to stop it.  *Hurley*, 911 F.3d at 703 (citing *T.E. v. Grindle*, 599 F.3d 583, 589 (7th Cir. 2010)).  That is precisely what Plaintiff has pleaded here; she alleges that both Captain Johns and Principal Luttrell were apathetic and dismissive when confronted by the Danvers' complaints.  *See, e.g.*, Dkt. 1 ¶¶ 52-53, 63-66.  As such, Plaintiff has adequately alleged that Captain Johns and Principal Luttrell were motivated by a discriminatory intent.

There is one more issue the Court must address.  Plaintiff does not allege that the School Officials personally harassed her; rather she alleges that Principal Luttrell and Captain Johns' *supervision* of Mr. Serrano violated the Equal Protection Clause.  *See Clark v. Md. Dep't of Pub. Safety and Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) (holding that supervisors "are liable in their individual capacities only for their personal wrongdoing or supervisory actions that violate[] constitutional norms").  Accordingly, Plaintiff must establish supervisory liability under Section 1983.  To do so, Plaintiff must also show that the School Officials had knowledge (constructive or actual) that Serrano was a subordinate "engaged in conduct that posed a

pervasive and unreasonable risk of constitutional injury to citizens like" Carol, and that "there was an affirmative causal link between [the School Officials'] inaction and the particular constitutional injury suffered by" Carol. *Hughes v. Sch. Bd. of Henrico Cnty.*, 488 F. Supp. 3d 307, 330 (E.D. Va. 2020) (quoting *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001)); *see also Jennings*, 483 F.3d at 701-02 (in Equal Protection claim against supervisor, plaintiff had to establish actual or constructive knowledge and a causal link between supervisor's inaction and plaintiff's constitutional injury); *Mikkelsen v. DeWitt*, 141 F. App'x 88, 91 (4th Cir. 2005) (same). As shown in Part III.A, Plaintiff has adequately pleaded that Principal Luttrell and Captain Johns had actual knowledge of Mr. Serrano's alleged harassment.

However, Plaintiff has not shown a causal link between Captain Johns or Principal Luttrell's deliberate indifference and the sexual harassment she suffered. Indeed, it is unclear from Plaintiff's Complaint whether she experienced any sexual harassment from Serrano after Mrs. Danvers reported Serrano's actions—whether in November or December of 2018. And Plaintiff has not otherwise connected the sexual harassment to Captain Johns or Principal Luttrell's alleged deliberate indifference to the claims. There is nothing in the Complaint indicating an "affirmative causal link" between Principal Luttrell or Captain Johns' inaction and Carol's sexual harassment. *Hughes*, 488 F. Supp. 3d at 330   As a result, Plaintiff has not adequately stated an Equal Protection claim against Captain Johns or Principal Luttrell premised on supervisory liability.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant Carlos Serrano's Motion to Dismiss (Dkt. No. 14) is DENIED; and it is

FURTHER ORDERED that Defendants Muriel Heanue, Bill Johns, the Loudoun County School Board, and Michelle Luttrell's Motion to Dismiss for Failure to State a Claim is GRANTED IN PART and DENIED IN PART; and it is

FURTHER ORDERED that Count IV of the Complaint is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Counts V, VI, and VII of the Complaint are DISMISSED WITH PREJUDICE solely as to the claims against Defendants Johns, Luttrell, and Heanue in their official capacities, and are dismissed WITHOUT PREJUDICE as to the claims against Defendants Johns, Luttrell, and Heanue in their individual capacities.

The Clerk is directed to forward copies of this Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
September 29, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge

31